## MOORE *v.* ALEXANDER.

### Opinion delivered January 20, 1908.

1. CONSTITUTIONAL LAW—VALIDITY OF STATUTE.—An act of the Legislature is generally valid unless in conflict with some express provision of the State or Federal Constitution; it not being sufficient to say that it is contrary to the spirit of such constitutions. (Page 175.)

2. SAME—CONTINUING APPROPRIATION.—Article 16, § 11, of the Constitution, which provides that "no moneys arising from a tax levied for one purpose shall be used for any other purpose," does not in its operation conflict with art. 5, § 28, which limits the period of all appropriations to two years. (Page 177.)

3. SAME—NEW CAPITOL ACT.—Under art. 5, § 28, of Const. 1874, providing that "no appropriations shall be for a longer period than two· years," the act of 1903 (p. 257), in so far as it attempted to make a· continuing appropriation for building the new State Capitol for a longer period than two years, is unconstitutional. (Page 178.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,*· Judge; reversed.

STATEMENT BY THE COURT.

April 29, 1901, the General Assembly passed an "act to provide for the completion of the State Capitol building, and for other purposes." Section 13 contained the following:

"That for the purpose of raising funds to carry out the provisions of this act, the sum of one million ($1,000,000) dollars, or so much thereof as may be necessary, be and the same is hereby appropriated for the purpose of completing the new State Capitol building, and, in order to raise said sum, a tax of one-half of one mill on each dollar of taxable property in this State is hereby levied; said tax of one-half of one mill to be levied and collected for the year 1901, and annually thereafter as all other taxes are now levied and collected until the said Capitol building is completed."

Provisions for the raising of other funds for the completion of the building, and many details in regard to the work were contained in the act.

The General Assembly of 1903 passed another act entitled "An act to provide for the completion of the State Capitol building, and for other purposes."

A Board of Capitol Commissioners was appointed, and various provisions made looking to the completion of said capitol in the manner therein prescribed.

Section 10 of said act contained this provision:

"That, for the purpose of raising funds to carry out the provisions of this act, the sum of one million dollars ($1,000,-000), or so much thereof as may be necessary, be, and the same is hereby appropriated, for the purpose of completing the new State Capitol building; and, in order to raise said sum, there is hereby appropriated all funds in the State Treasury heretofore collected for or appropriated as a State Capitol fund, and the tax of one-half of one mill on each dollar of taxable property now levied in accordance with the act provided for the completion of the State Capitol building, and for other purposes, approved April 29, 1901, shall be continued to be levied and collected and appropriated as provided in said act until the said Capitol is fully completed." Acts 1903, c. 146, p. 257.

Neither the General Assembly of 1905 or of 1907 renewed

the levy or appropriated the fund arising from this tax levy for the purpose of completing said Capitol Building or any other purpose.

This is an action by one of the Capitol Commissioners to mandamus the Auditor to issue a warrant for his compensation and mileage in attending a meeting of the Capitol Commission. The Auditor refused to do so on the ground that there was no appropriation available therefor. The mandamus was awarded, and the Auditor has appealed.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellant.

It is written: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents, and no appropriations shall be for a longer period than two years." Art. 5, § 28, Const. "No moneys shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation." Art. 16, § 12, Const. This appeal calls for the construction of the foregoing provisions of the Constitution, together with the following statutes: Kirby's Digest, § § 3415 to 3418, 3441. The primary object of these provisions of the Constitution and the statutes above named is to prevent the expenditure of the people's money without their consent in the organic law or constitutional acts of the Legislature. A specific appropriation by the Legislature in the manner set out in section 28 art. 5, Const., is an absolute prerequisite, a condition precedent, to the drawing from, or paying out of, the treasury of any money. Its scope is all-comprehending. *No money at all* can legally be drawn from the treasury, except under the forms of law declared by the people in their Constitution, or by their representatives in the Legislature. *Supra;* 27 Ark. 129; 42 Ark. 233; 28 Ark. 348. Section 10 of the act of April 16, 1903, appropriating "the sum of one million dollars, or so much thereof as may be necessary for the purpose of completing the new State Capitol building," is a "specific appro-

priation," with its "purpose distinctly stated," and the "maximum amount" which may be drawn thereunder "specified in dollars and cents," and the further provision in that act that the tax levied "shall continue to be levied and collected and appropriated as provided in said act until the State Capitol building is fully completed" cannot be said to be a further appropriation of the taxes so levied to the payment for the completion of the building, since the amount of the appropriation is specified, fixed and limited to one million dollars, or so much thereof as may be necessary. "No appropriations shall be for a longer period than two years." Had the framers of the Constitution intended this part of sec. 28 to apply only to the general fund, they would have so expressed it, either in that section or in section 29, which applies to general appropriations, or in section 30, which applied to special appropriations. Supporting appellant's contention, see 13 Kan. 223; 47 Kan. 119; 11 Mont. 553; 5 Neb. 566; 66 Mo. 385; 64 Mo. 526; 107 Ill. 495.

*Murphy, Coleman & Lewis,* for appellee.

The narrow, strict, and literal interpretation of the Constitution insisted upon by the Attorney General is not in accord with the general and well-established rule of interpretation. Black on Interpretation of Laws, 13, § 7. The court is not limited, as is insisted by appellant, to an interpretation of the particular section relied upon, but it may resort to the principles of construction, looking to the instrument as a whole. Art. 5, § 28, Const., deals exclusively with the legislative department. Reading this section and section 29 together, it appears that section 28 is dealing with appropriations out of the general revenues of the State for the ordinary expenses of the three departments of government. In article 16, Const., dealing exclusively with finance and taxation, there is another provision, almost identical with section 28, *supra,* but with the notable difference that it omits the limitation of two years. Art. 16, § § 11, 12. The presumption is that the Constitution contains no redundant provisions and no repetitions, and that, if certain restrictions are thrown around appropriations out of the general revenue fund which are not repeated in the article providing for

the levy of special tax for special purposes, which purposes may or may not have to do with the regular period of two years applying to the ordinary affairs of State, such restrictions were purposely omitted, and were not intended to apply to legislative action with reference to such special appropriations. Inasmuch as some effect must be given to every sentence, phrase and word of a Constitution, under the rules of construction, some effect and meaning must be given to sec. 12, art. 16; and yet, unless a different meaning is given to it from that of sec. 28, art. 5, it is absolutely without effect, and must be read out of the Constitution, for, if it is not different, its entire elimination would in no wise change the Constituton. When the Legislature levies a special tax for a special purpose, the proceeds are forever appropriated to the specific purpose for which the tax was levied. Art. 16, § 11. And such proceeds are not subject to legislative control. If section 3416, Kirby's Digest, is held to require the proceeds of a special tax to be covered in the general revenue fund, it would to that extent be unconstitutional, bcause the unexpended balance of the special levy for the State Capitol building can never be covered into the general revenue fund until the object of such levy has been fully accomplished. 66 Ark. 82; *Id.* 39; 4 Md. 189; 4 Neb. 216; 9 Mont. 370.

HILL, C. J., (after stating the facts.) The question on this appeal is whether the act of 1903, making a continuing appropriation for the building of the new Capitol, is constitutional.

The General Assemblies of 1901 and 1903 each made a continuing levy of a tax for the purpose of building the new Capitol and made a continuing appropriation thereof. Neither of the last two General Assemblies have levied said tax or appropriated the funds arising therefrom. As there is no constitutional limitation forbidding a continuing levy, it is valid, and the levy will continue until it expires by its own limitation or is repealed by a subsequent Legislature. There is no controversy over this.

The question is solely as to the power of the General Assembly to make a continuing appropriation. The general rule is that the acts of the General Assembly are valid unless in con-

flict with some express provision of the State or Federal Constitution, and it will not do to say that the act is contrary to the spirit of the Constitution, but the clause must be indicated and the repugnancy between it and the act apparent before the courts are justified in pronouncing the act null.  1 Lewis's Sutherland, Stat. Con. (2d. Ed.), § 85.

The Attorney General lays his finger on section 28, art. 5, of the Constitution, and says it prohibits this continuing appropriation.  The section reads as follows:

"No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; *and no appropriation shall be for a longer period than two years.*"

The attorney for the capitol commissioner says that this section is dealing with the revenues raised for the ordinary expenses of the State government, and not with special taxes raised for specific purposes.  In other words, that this clause relates to funds which sections 3416-3418 of Kirby's Digest require to be balanced at the expiration of the appropriation period and the unexpended balances covered into the treasury.  This statutory provision cannot apply to the fund in question, for another constitutional provision consecrates it solely to the purposes for which it was raised.  Section 11, art. 16, reads:  "No tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; *and no moneys arising from a tax levied for one purpose shall be used for any other purpose.*"  The section following it reads:  "No moneys shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."  Sec. 12, art. 16.

The argument is that these sections apply to taxes derived from specific levies which cannot be diverted from their purpose, and as to them the only requirement is that they shall not be paid out until appropriated, and that the act of 1903, making a continuing appropriation, meets this requirement, and that section 28, art. 5, is inapplicable.

To sustain this argument would require that something be written into the Constitution which is not there, and something written out of it which is there. There is no provision for or recognition of special levies for specific purposes in the Constitution, unless it be the mandate that no moneys arising from a tax levied for one purpose shall be used for any other purpose. These special levies are valid simply because they are not forbidden; the General Assembly can create whatever taxes it may deem necessary, when not restricted by some constitutional limitation. This provision is far from creating a system of special taxation, which would be governed by its own provisions, and not be controlled by general laws. An elementary principle of constitutional and statutory construction is that where there are special provisions governing a particular subject general provisions do not apply. Endlich on the Interpretation of Statutes, § § 223, 226. But there are no provisions in the Constitution to which the subject of special taxes as herein levied can be attached and section 28, art. 5—the general rule as to appropriating taxes—be detached therefrom.

It is also argued that, as section 11, art. 16, takes this fund out of the power of the General Assembly to divert to any other purpose, there is no power left in the General Assembly to act in the premises, and that the requirement that appropriations be not made for more than two years would be meaningless if applied to this fund; and consequently, the only requirement is an appropriation under section 12, art. 16, and this has been met by the appropriation of 1903. It is unquestioned and unquestionable that section 11, art. 16, has taken this fund out of the power of the General Assembly to divert to any other purpose; and if the General Assembly has no power in the premises, it would be sound construction to hold that section 28, art. 5, did not apply to it, although the language is broad enough to do so, because it is not to be supposed that the Constitution would require of the Legislature the empty formality of appropriating this fund when it had no power over it. If the General Assembly has no power over this fund, then this provision does not reach to it, and will be limited in its operation to matters over which the Legislature has control.

The question therefore is really whether the General Assembly has any power whatever over this fund which has been raised for the purpose of building the new capitol.   In considering this question, it must be borne in mind that the Legislature has unlimited power over all the State's internal affairs except where restrained by positive constitutional provision.   There are no provisions in the Constitution touching this matter, except the one mentioned that the fund shall not be diverted.

Returning to the question, what power remains to the Legislature in the premises? suppose that a state of war should exist, and for the second time in its history a hostile army should approach the capital of the State, would it not be within the power of the Legislature to postpone this work and conserve these funds to a happier day?   Suppose that the State was erecting this building on its own account, and not by contract, and that structural material suddenly advanced to exorbitant prices for some temporary reason, would it not be the part of wisdom to delay the work until this temporary enhancement passed?   Other matters addressing themselves to the sound discretion of the Legislature, making it wise to postpone the work and conserve the fund, might arise.   No provision of the Constitution can be found forbidding action by the Legislature under the circumstances supposed; and what is not forbidden it is permitted it.   If it be admitted that the Legislature can for any good cause postpone the work, deny the appropriation, and conserve the funds for a future date, then it must be admitted that the General Assembly can do so for any cause which seems to it good.   It is not unusual in appropriating funds for the Legislature to limit the amounts for certain purposes; forbid certain things and command other things.   Why has not the Legislature this same discretion in appropriating this fund to the completion of the new Capitol?

There is certainly a limited field of legislative action in this matter, and, that being true, then it follows that section 28, art. 5, must apply.   It applies wherever the Legislature makes appropriations which are not otherwise provided for.   If the Legislature can appropriate this fund to the purpose for which it was raised, or refuse to appropriate it or postpone its appro-

priation or direct the details of the appropriation, then it is like any other fund—except the power of the Legislature is more limited—to be appropriated, and can only be appropriated in conformity to the Constitution; and, when appropriated otherwise, the act is unavailing. There is no mandate for the Legislature to make the appropriation or act in the premises, and its silence is as potent as its positive action. The continuing appropriation of the act of 1903 is in conflict with this clause of the Constitution, and is necessarily void beyond two years; and, the Legislature not having acted since that time, it is the legislative determination that this fund be conserved in the treasury until another Legislature appropriates it for the purpose for which it was created.

Judgment reversed, and mandamus denied.