DICKINSON, AUDITOR *v.* CLIBOURN.

Opinion delivered July 3, 1916.

1. GAME AND FISH COMMISSION—APPROPRIATION TO PAY SALARIES.—
Act No. 124, Acts of 1915, creating the State Game and Fish Commission, *held,* not to provide any appropriation of funds for the expenses of the commission.

2. PUBLIC FUNDS—APPROPRIATION THEREOF—CONSTITUTIONAL LIMITATIONS.—All funds required by statute to be paid into the State

treasury are money within the meaning of the constitutional requirements relating to appropriations thereof and no money coming into such treasury by operation of such laws, can be legally drawn therefrom or paid out of the treasury, except in pursuance of specific appropriations made in accordance with said constitutional requirements.

3. PUBLIC FUNDS—"APPROPRIATION" DEFINED.—"Appropriation denotes the setting apart or assigning to a particular use a certain sum of money for a specified purpose in such a manner that the public officials are authorized to draw and use the sum so set apart and no more, for the purpose specified and for no other."

Appeal from Pulaski Circuit Court, Third Division, *G. W. Hendricks*, Judge; reversed.

*Wallace Davis*, Attorney General and *Hamilton Moses*, Assistant Attorney General, for appellants. *Walter J. Terry* of Counsel.

1. Mandamus will lie against the auditor to compel him to issue a warrant only when there is a law making it his duty to do so. 104 Ark. 583; 45 Cal. 149. There is no duty incumbent upon the auditor to issue the warrant here. He can only issue warrants where there has been money appropriated by law for that purpose. Const. 1874, Art. 16, § 12; Kirby's Digest, § 3415; 42 Ark. 233.

2. There has been no appropriation made by Act 124, Acts 1915, p. 464. The Legislature alone has power to make appropriations. Const. Art. 16, § 2. Definite limits on the exercise of this power are placed by the Constitution. Art. 5, §§ 28, 29. Sections 6, 8, 11, 12 and 20 do not constitute an appropriation. 27 Ark. 129, 131; 45 Cal. 149; 12 Neb. 407; 15 *Id.* 609; 23 *Id.* 25; 50 *Id.* 89. The amount must be stated in dollars and cents and be specific, certain and definite. 45 Cal. 149; 50 Neb. 88; 23 *Id.* 25. The requirements and even formalities of the constitution must be observed. 93 Ark. 336, 24 *Id.* 161; 1 *Id.* 513, 538; 27 *Id.* 266, 280; 101 *Id.* 473. The provision of § 28, Art. 5, is mandatory. 26 Ark. 281; 27 *Id.* 129; *Ib.* 266; 28 *Id.* 348; 48 *Id.* 82; 93 *Id* 34; 101 *Id.* 473; 103 *Id.* 48, 109; 176 U. S. 559; 64 Mo. 526; 64 *Id.* 294; 69 Cal. 479.

3. The provision applies to all moneys paid into the State Treasury for fees, licenses, etc. 13 Kans. 220; 91 Pac. 819; also to special taxes. 85 Ark. 171; also to salaries and expenses of officers and employes of a Fish and Game Commission. 107 Pac. 159; 13 Kans. 220.

4. The Legislature cannot delegate to another body its power to appropriate money. 27 Ark. 129, 131, 266, 273.

*D. G. Beauchamp, Moore, Smith, Moore & Trieber* and *Miles & Wade*, for appellee.

1. No specific appropriation of the Legislature is necessary, but, if so the Fish & Game Act so appropriates the funds raised under the Act. The various provisions of the Constitution, Art. 16, §§ 5 to 11, Art. 6, § 12, etc., refer only to general taxes and revenues collected from assessments. 120 Ark. 80; 178 S. W. 930. § 3598 Kirby's Digest makes game and fish the property of the State and catching same a privilege. The Game and Fish Act is under the police power of the State and fees and licenses are not taxes and by no means subject to the constitutional provisions requiring specific appropriations. 103 Ill. 130; 38 Mich. 306; 46 *Id.* 183; 39 Oh. St. 340; 37 Cyc. 711.

2. The language of the Act makes a specific appropriation, §§ 6, 11, 12, and 20. This Act was passed within the two years. A fund is created and can be used for no other purpose; *all* this fund is appropriated. This meets all the requirements of the constitution. 32 Neb. 32; 20 Ind. 328; 22 Am. St. 624; 43 Ala. 427; 80 Cal. 220; 22 Pac. 143; 29 Nev. 469; 91 Pac. 819.

KIRBY, J. Appellee brought this suit against the State Auditor and Treasurer for a mandamus to compel the Auditor to issue a warrant on the Treasurer on a voucher drawn by the Game and Fish Commission in his favor as a game warden and the Treasurer to pay same out of the game and fish protection fund.

It was alleged that the voucher was duly issued for services rendered and that the Auditor and Treasurer

refused to issue a warrant thereon and cash same, claiming no appropriation had been made of said fund for such purpose.

The court having overruled a general demurrer to the complaint and appellants declining to plead further, entered a judgment granting the relief prayed, from which this appeal is prosecuted.

Appellants contend that no appropriation was made by the Legislature of the moneys raised under the Act creating the Fish and Game Commission out of which the claim could not be paid and that the court erred in not so holding.

The State Game and Fish Commission was created by Act No. 124 of the Acts of the General Assembly of 1915, which requires the payment of certain license fees for the privilege of hunting and fishing and that all moneys received from such license fees and fines for violation of the game laws, shall be paid into the State Treasury.

It is contended by appellee that a sufficient appropriation of all the moneys paid into the Treasury under the provisions of the Act within the meaning of the Constitution, is made by section 11, 12 and 20 thereof as follows:

"Sec. 11. All licenses, fines and forfeitures provided for in this Act shall be paid in lawful money of the United States to the State Treasurer, and shall constitute, be and remain a separate fund to be known as the Game Protection Fund. Such fund shall be used for no other purpose than paying the necessary expense of enforcing the game and fish laws of the State."

"Sec. 12. The expenses of the Commission and the pay of its employees shall be paid out of the Game Protection Fund, and out of no other Fund. * * *

"Sec. 20. That all moneys arising from fines, forfeitures, or licenses under any law for the protection of game and fish, now existing or hereinafter enacted, shall be collected in lawful money of the United States and be paid immediately by the collecting officer to the State Treasurer, and said moneys shall be set aside, to be known as the Game and Fish Protective Fund, and shall be available for the protection of the game, the birds and the fish."

The provisions of the Constitution and other laws necessary to be considered are:

"No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill; and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriation shall be for a longer period than two years." Sec. 29, Art. 5, Const.

"No money shall be paid out of the treasury until the same shall have been appropriated by law; and then only in accordance with said appropriation." Sec. 12, Art. 16, Constitution.

"No warrants shall be drawn by the Auditor or paid by the Treasurer unless the money has been previously appropriated by law, nor shall the amount drawn for or paid under one head ever exceed the amount appropriated by law for that purpose." Sec. 3415, Kirby's Digest.

"The Treasurer is prohibited from paying any money out of the treasury on any account whatever, except upon the lawful warrants of the Auditor." Sec. 3441, Kirby's Digest.

"In all cases where the law recognizes a claim for money against the State, and no appropriation shall be made by law to pay same, the Auditor shall audit and settle such claim, and give the claimant a certificate of the amount thereof, under his official seal, if demanded, and report the same to the Governor, who shall lay the same before the General Assembly." Sec. 3409, Kirby's Digest.

The primary object of these provisions of the Constitution and statutes in aid thereof, is to prevent the expenditure of the people's money, without their consent expressed in the organic law or constitutional acts of the Legislature.

A specific appropriation is an absolute pre-requisite to the drawing from or payment out of the State Treasury of any money therein required to be appropriated. No money for general, ordinary, special, contingent or other expense, no money at all, can be legally drawn therefrom,

except under the forms of law in accordance with an appropriation properly made.

In *Moore* v. *Alexander*, 85 Ark. 171, the court held that the capitol fund collected pursuant to a special tax levied for the purpose of building a State Capitol, could not be paid out unless there had been a biennial appropriation specifying the money to be used, notwithstanding it was beyond the power of the General Assembly to divert the fund collected therefor to use for any other purpose under Sec. 11, Art. 16 of the Constitution.

In *Dickinson, Auditor* v. *Edmondson*, 120 Ark. 80, the court held that the common school fund was appropriated by article 14 of the Constitution which is self executing, providing for its creation and collection, and that no appropriation thereof was required by the General Assembly and in discussing said provision of the Constitution, Art. 5, Section 29, after stating that it refused to hold in *Moore* v. *Alexander*, *supra*, that it had no application to the fund raised from a special tax and applied at least to all revenues raised for State purposes, said:

"We are unwilling to recede from the position taken in that case, for it is plain that the framers of the Constitution intended to place an unmistakable limitation upon the authority of public officials in paying out public funds, and to declare that all the State funds which are within the purview of the provision must be held in the treasury, until a specific appropriation thereof has been made by the Legislature. The power of the General Assembly with respect to the public funds raised by general taxation, is supreme, and no State official, from the highest to the lowest, has any power to create an obligation of the State, either legal or moral, unless there has first been a specific appropriation of funds to meet the obligation. The Constitution provides, too, that no appropriation shall be for a longer period than two years, and thus a period is fixed over which the lawmakers hold complete control over the purse-strings of the State."

An unmistakable purpose is shown in said provisions of the Constitution and statutes quoted, to prevent the payment out of, or drawing from the State Treasury, any

money raised under the operation of any statute, until the same is appropriated by law, which appropriation is required to be specific, and the purpose distinctly stated in the bill and the maximum amount which can be drawn, specified in dollars and cents. No appropriation shall be for a longer period than two years and all appropriations not expended during the period are required covered into the treasury at the end thereof, the manifest intention being to give each succeeding legislature a comprehensive and exact view of the State's financial condition from the appropriations made and expended and to require it to make such appropriations for the next two years in accordance with the Constitutional limitations as will meet the needs of the State Government and pay the expenses of its administration.

Appellee insists that said sections of the Act under consideration, make a sufficient appropriation of the fund within the constitutional requirements, but we do not think so. It is true that all the moneys arising from the operation and execution of the law paid into the State Treasury are required set apart into a particular separate fund to be used only "for paying the necessary expense of enforcing the Game and Fish laws of the State" which it is said "shall be available for expenses in enforcing the various provisions of the law for the protection of the game, the birds and the fish," but no maximum amount is specified in dollars and cents and it cannot be said that the appropriation is specific when the amount that would probably be raised from the operation of the law was entirely contingent and altogether unknown, nor does the said language sufficiently manifest an intention to authorize the drawing of the money out of the treasury until after an appropriation properly made.

The framers of the Constitution intended that each Legislature shall fix a maximum amount specified in dollars and cents in every appropriation made beyond which the fund cannot be used during the period, in language so clear as to manifest an intention that it is set aside and authorized to be drawn and used for the purpose distinctly stated.

Appropriation denotes the setting apart or assigning to a particular use a certain sum of money for a specified purpose in such a manner that the public officials are authorized to draw and use the sum so set apart and no more, for the purpose specified and no other. *Clayton* v. *Berry*, 27 Ark. 129; *State* v. *Moore*, 50 Neb. 88; *Stratton* v. *Green*, 45 Calif. 149.

The said provisions of the Act do not constitute an appropriation of the funds, paid into the State Treasury, through the operation thereof, in accordance with the constitutional requirements and the court erred in holding otherwise. All funds required by statute to be paid into the State Treasury are money within the meaning of the Constitutional requirements relating to appropriations thereof and no money coming into such treasury by operation of our laws, can be legally drawn therefrom or paid out of the treasury, except in pursuance of specific appropriations made in accordance with said constitutional requirements.

The judgment is reversed and the cause remanded with directions to sustain the demurrer to the complaint.

HART and SMITH, JJ., dissent.