DIRECTOR OF BUREAU OF LEGISLATIVE RESEARCH
*v.* MACKRELL.

4-8373                                                    204 S. W. 2d 893

Opinion delivered October 13, 1947.

Rehearing denied November 3, 1947.

*Guy E. Williams*, Attorney General, and *Ike Murry*, Assistant Attorney General, for appellant.

*John R. Thompson*, for appellee.

HOLT, J.  Appellee, a taxpayer, brought this suit to enjoin the Director of the Bureau of Legislative Research, the State Auditor and the State Treasurer, from disbursing funds allocated to the Legislative Council by the State Board of Fiscal Control.

He alleged in his complaint "that the defendant, the Director of the Bureau of Legislative Research of the State of Arkansas, is about to cause the transfer of funds from the State Treasury in the sum of $9,408.33 for the purpose of paying salaries to himself and other employees of said Bureau claiming as authority therefor certain action on the part of the Board of Fiscal Control of the State of Arkansas done and had at its meeting in Little Rock, Arkansas, on the 22nd day of July, 1947, wherein said Board of Fiscal Control attempted to appropriate money appropriated by Act 292 of 1947, being an Act to make an appropriation for emergency funds to be used by the State Board of Fiscal Control.  Plaintiff states that said Director has no right to cause the transfer of such funds to him under the authority given by the State Board of Fiscal Control or anyone else and that the State Board of Fiscal Control had no authority to make appropriation from the emergency fund set up in said Act for the purpose of paying salaries of employees of said department, said action being in direct contravention with art. V, § 29, and art. 16, § 4 of the Constitution of the State of Arkansas, and unless enjoined by this court, the said Director of the Bureau of Legislative Research will cause warrants or vouchers to be issued against said fund and that the defendant, J. Oscar Hum-

phrey as State Auditor, and the defendant, J. Vance Clayton as State Treasurer, will honor said warrants and cause the funds of the State of Arkansas to be paid out thereon.''

His prayer was that appellants be enjoined ''from paying out any moneys from the Treasury of the State of Arkansas for salaries of the Director of the Bureau of Legislative Research or any other employees thereof, etc.''

Appellants filed a demurrer, which the trial court overruled. Appellants elected to stand on the demurrer, refused to plead further, and from the decree granting injunctive relief as prayed, comes this appeal.

March 6, 1947, the State Legislature, by Act 192, provided for a Legislative Council, prescribed its duties and authority, and established ''a Bureau of Legislative Research to include a Director to be selected by the Legislative Council and clerical help of at least one stenographer and such other assistants as may be provided for by the Biennial Appropriation Act covering such departments.''

It was further provided that the salary of the Director should be $5,000 per annum and ''the employees of the Bureau of Legislative Research shall receive such remuneration as may be provided by biennial appropriations.'' (§ 12.)

There was no appropriation by the Legislature to cover salaries of the Director and the employees provided for in the Act. In fact, the Journals of proceedings in the 1947 session of the Legislature, of which we take judicial notice, show that House Bill No. 432 was introduced for this very purpose, but failed of passage. However, Act 292 of the 1947 session provides: ''Section 1. There is hereby appropriated, to be payable from the General Revenue Fund, the following: FOR THE FISCAL YEAR ENDING JUNE 30, 1948, (1) For the use of the State Board of Fiscal Control in emergencies as defined in § 10 of Act 53 of 1945 the sum of............$100,000. FOR

THE FISCAL YEAR ENDING JUNE 30, 1949, (1) For the use of the State Board of Fiscal Control in emergencies as defined in § 10 of Act 53 of 1945 the sum of............. $100,000.''

Section 10 of Act 53 of 1945 contains the provision that ''in the event of riot, sabotage, public insurrection or threatened insurrection, storm, flood, famine, or other public calamity, including but without limitation to emergencies which may arise by reason of war, or in the event the General Assembly has imposed public duties upon some officer or department of State without making appropriation therefor, and the discharge of such public duties is necessary for the efficient operation of the State Government, the Governor shall call the Board into session for the purpose of considering all facts presented in connection therewith; and, if in its opinion the emergency is of sufficient import to require such action, the Board is authorized and directed, by resolution duly adopted to set aside from appropriations made available to the Board for such emergencies, funds in sufficient amount to alleviate the prevailing conditions. . . . All voucher-warrants drawn as provided in this section, shall be payable from the General Revenue Fund.''

The primary and decisive question presented is whether the State Board of Fiscal Control possessed the power to allocate to the Legislative Council from funds made available to it by Act 292, *supra,* the sum of $9,408.33, for the purpose of paying the unappropriated salaries of the Director of the Bureau of Legislative Research and an undetermined number of other employees.

As indicated, the trial court held that no such power existed, and granted the injunctive relief as prayed by appellee.

It is our view that the action of the court was correct and that the decree should be affirmed for the reasons which we shall presently point out.

It appears obvious that the Legislature, by Act 192, *supra,* has created a new State Agency, along with the Bureau of Legislative Research, consisting of a Director,

at least one stenographer and other clerical help without number. Only the salary of the Director is mentioned and an appropriation for the payment of the Director's salary and the other employees provided for under the Act, was specifically denied by the Legislature when as indicated a bill was introduced for that purpose.

It further appears that the State Board of Fiscal Control has directed that $9,408.33 be taken from the $100,000 emergency fund appropriated from the General Revenue Fund under Act 192, and used to pay the salary of said Director and the other employees under Act 192, after the Legislature had refused to supply the funds for these salaries. The power, which the Board of Fiscal Control attempted to exercise—however worthy its intentions were—is, we think, denied to it, under the plain and unambiguous terms of the following provisions of the Constitution of Arkansas:

"Article V, § 29. No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years."

"Article XVI, § 4. The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law."

"Article XVI, § 12. No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."

These provisions of our Constitution have been many times construed by this court. In *Oliver v. Bolinger,* 146 Ark. 242, 225 S. W. 314, we find this language:

"In construing these sections of the Constitution (meaning art. 5, § 29, and art. 16, § 12), this court said, in the case of *Dickinson* v. *Clibourn,* 125 Ark. 101, 187 S. W. 909, that 'a specific appropriation is an absolute prerequisite to the drawing from or payment out of the State treasury of any money therein required to be appropriated. No money for general, ordinary, special, contingent or other expense, no money at all, can be legally drawn therefrom, except under the forms of law in accordance with an appropriation properly made.' The effect of this construction is to prevent money, which has been deposited in the State treasury through forms of law, from being withdrawn without specific appropriations first made by the Legislature."

Quoting further from the opinion of *Dickinson, Auditor,* v. *Clibourn, supra*: "The framers of the Constitution intended to place an unmistakable limitation upon the authority of public officials in paying out public funds, and to declare that all the State funds which are within the purview of the provision must be held in the treasury, until a specific appropriation thereof has been made by the Legislature. The power of the General Assembly with respect to the public funds raised by general taxation is supreme, and no State official, from the highest to the lowest, has any power to create an obligation of the State, either legal or moral, unless there has first been a specific appropriation of funds to meet the obligation. The Constitution provides, too, that no appropriation shall be for a longer period than two years, and thus a period is fixed over which the lawmakers hold complete control over the purse-strings of the State.

"An unmistakable purpose is shown in said provisions of the Constitution and statutes quoted, to prevent the payment out of, or drawing from the State Treasury, any money raised under the operation of any statute, until the same is appropriated by law, which appropriation is required to be specific, and the purpose distinctly stated in the bill and the maximum amount which can be drawn, specified in dollars and cents." See, also, *Arkan-*

*sas Game & Fish Commission* v. *Page, Treasurer,* 192 Ark. 732, 94 S. W. 2d 107.

Attention also is called to art. XVI, § 4 of our Constitution, which provides: "The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee, or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law."

In construing this section Mr. Justice Wood, in *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45, said: "The power to fix the salaries and fees of all officers in the State, and the number of their clerks and employees and their salaries, is a function, which, within the limits of the Constitution, is lodged in the supreme lawmaking power of the State—the Legislature. *Cain* v. *Woodruff County,* 89 Ark. 456, 117 S. W. 768; *Humphrey* v. *Sadler,* 40 Ark. 100; Throop on Public Officers, § 500. The General Assembly cannot delegate this legislative power to any individual, officer, or board."

The ruling in this case was reaffirmed in *Pulaski County* v. *Caple,* 191 Ark. 340, 86 S. W. 2d 4.

It thus appears that the primary purpose of the above provisions of the Constitution is to prevent the expenditure of the people's tax money without having first procured their consent, expressed in legislative enactments which do not contravene these constitutional provisions.

On appellants' argument that there has arisen such an emergency as contemplated under § 10 of Act 53, *supra,* such as would warrant the withdrawal of the amount of money sought to be withdrawn here from the fund created under Act 292, *supra,* we think little need be said for the reason that no such emergency, as contemplated by the Constitution, has been shown.

Finding no error, the decree is affirmed.