The Honorable Gary Hunter State Senator 145 Spring Lake Drive Mountain Home, AR 72653-5478
Dear Senator Hunter:
I am writing in response to your request for an opinion on the following questions regarding the Gateway Charter School ("Gateway"), which as you note surrendered its charter to the Department of Education on September 10, 2001:
 1. After Gateway Charter School surrendered its charter on September 10, 2001 to the Department of Education, may the Department of Finance and Administration, pursuant to the appropriations contained in Acts 1016, 1024, and 1691 of 2001, issue state warrants payable to the Gateway Charter School?
 2. If the answer to question 1 is "yes," may those state warrants be used by the Ozark Unlimited Resource Cooperative to offset debt incurred by Gateway Charter School prior to the surrender of their charter on September 10, 2001?
 3. If the answer to question 1 is "yes," and the answer to question 2 is "no," what is a proper expense of the appropriated funds?
 4. May funds appropriated pursuant to the listed 2001 acts for Gateway Charter School be expended for expenses of the Ozarks Unlimited Resource Cooperative, the sponsoring organization for the Gateway Charter School?
RESPONSE
As additional backdrop to these questions, I should note that according to my understanding at least one such warrant was in fact issued subsequent to the surrender of Gateway's charter. The question, therefore, is whether this warrant may lawfully be redeemed, or whether any future warrants may be issued. It is also my understanding that there is no outstanding capital improvement debt of Gateway.
It is my opinion that a disbursement of the appropriated funds under these circumstances would be unlawful. In response to your specific questions, it is my opinion that any warrants issued after the surrender of the charter should not be redeemed, that no further warrants should be issued, and that no appropriated funds may be expended for expenses of the Ozarks Unlimited Resource Cooperative.
A specific appropriation is an absolute prerequisite for the expenditure of funds out of the state treasury. Director of Bureau of LegislativeResearch v. Mackrell, 212 Ark. 40, 204 S.W.2d 893 (1947). The Arkansas Supreme Court has defined an "appropriation" as:
 [A] setting apart from the public revenues of a certain sum of money for a specified object in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and for no other.
Jobe v. Caldwell, 93 Ark. 503, 513, 125 S.W. 423 (1910). See alsoDickinson v. Clibourn, 125 Ark. 101, 187 S.W. 909 (1916); Grable v.Blackwood, 180 Ark. 311, 22 S.W.2d 41 (1929); Scougale v. Page,194 Ark. 280, 106 S.W.2d 1023 (1937). This definition is in accordance with Article 5, Section 29 of the Arkansas Constitution, which provides in relevant part:
 No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents[.] [Emphasis added.]
Similarly, Article 16, Section 12 of the Arkansas Constitution provides that "[n]o money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with saidappropriation." (Emphasis added).
The court in Dickinson, supra, stated the following after citing art. 5, § 29, and art. 16, § 12, and several statutes governing the withdrawal of state funds:
 An unmistakable purpose is shown in said provisions of the Constitution and statutes quoted, to prevent the payment out of, or drawing from the State Treasury, any money raised under the operation of any statute, until the same is appropriated by law, which appropriation is required to be specific, and the purpose distinctly stated in the bill and the maximum amount which can be drawn, specified in dollars and cents. . . . The framers of the Constitution intended that each Legislature shall fix a maximum amount specified in dollars and cents in every appropriation made beyond which the fund cannot be used during the period, in language so clear as to manifest an intention that it is set aside and authorized to be drawn and used for the purpose distinctly stated.
125 Ark. at 106-107 (emphasis added).
The appropriation acts in question in this instance are capital improvement appropriations. See Subtitles of Acts 1016 and 1024 of 2001. They authorize the use of the funds for "financial assistance to [Gateway.]"[1] The purpose of these appropriations is thus clear: They are to provide financial assistance to the Gateway Charter School for capital improvements. It must be recognized, however, that they are appropriation measures only, fixing maximum amounts to be expended for the stated purposes. They do not require that the monies appropriated be spent. See generally Ark. State Highway Comm. v. Mabry, 229 Ark. 261,266-267, 315 S.W.2d 900 (1958). Indeed, in this instance, it appears that the monies cannot be spent because the entity to which any warrants would be issued pursuant to the appropriations does not exist (Gateway having surrendered its charter on September 10, 2001). It is my further understanding that prior to its dissolution, Gateway had no outstanding debt that had been lawfully incurred under the Charter Schools Act, which provides that open-enrollment charter schools "[s]hall not incur any debts without the prior review and approval of the Director of the Department of Education[.]" A.C.A. § 6-23-401(a)(5) (Repl. 1999).
I must conclude under these circumstances that the purpose of the appropriations cannot be accomplished. Any disbursement of the funds out of the state treasury would thus, in my opinion, give rise to a challenge under Ark. Const. art. 16, § 12, supra. A so-called "public funds" illegal exaction action may also ensue, based upon the misapplication of funds. See generally Pledger v. Featherlite, 308 Ark. 124, 823 S.W.2d 852
(1992) (identifying the two categories of illegal exactions: "public funds" and "illegal tax"). Cf. also Hasha v. City of Fayetteville,311 Ark. 460, 845 S.W.2d 500 (1993) and Hartwick v. Thorne, 300 Ark. 502,780 S.W.2d 531 (1989) (upholding illegal exaction challenges where there has been a failure of purpose, notwithstanding the legality of the initial tax levy).
I thus conclude, based upon the foregoing, that any warrants issued pursuant to these appropriations after the surrender of Gateway's charter should not be redeemed, and that no further warrants should be issued. It is also my opinion that no appropriated funds may be expended for expenses of the Ozarks Unlimited Resource Cooperative.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Act 1016 appropriated $100,000 "[f]or financial assistance to the Gateway Charter School[.]" Act 1024 appropriated $150,000 "[f]or assistance to the Gateway Charter School in Ponca . . . [.]" Act 1691 is the "General Improvement Distribution Act of 2001" by which the legislature defined the monies that may actually be made available to fund the named programs, i.e., $115,00 for the "Gateway Alternative Charter School in Ponca." Acts 2001, No. 1691, § 3 (p. 19).