Sheffield Nelson, Esquire Jack, Nelson, Jones, Fink, Jiles Gregory, P.A. 425 West Capitol Avenue, Suite 3400 Little Rock, Arkansas 72201
Dear Mr. Nelson:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed initiated act. Your popular name and ballot title are as follows:
 Popular Name THE NATURAL GAS SEVERANCE TAX ACT OF 2008 Ballot Title AN ACT PROPOSING THAT EFFECTIVE JANUARY 1, 2009, THE SEVERANCE TAX ON NATURAL GAS EXTRACTED FROM WITHIN THE STATE OF ARKANSAS BE INCREASED FROM THREE-TENTHS OF ONE CENT (3/10 OF $.01) PER 1,000 CUBIC FEET TO SEVEN PERCENT (7.0%) OF THE MARKET VALUE OF SUCH NATURAL GAS AT THE TIME SUCH NATURAL GAS IS EXTRACTED; PROVIDING THAT THE AMOUNT OF FUNDS RAISED UNDER THE CURRENT SEVERANCE TAX LAW WOULD CONTINUE TO BE DISTRIBUTED AS SET FORTH IN CURRENT LAW; AND PROVIDING THAT THE ADDITIONAL REVENUES *Page 2 
COLLECTED BY THE STATE OF ARKANSAS FROM SUCH INCREASE IN THE SEVERANCE TAX ON NATURAL GAS SHALL BE CLASSIFIED AS SPECIAL REVENUES OF THE STATE OF ARKANSAS AND HELD BY THE STATE TREASURER IN A FUND KNOWN AS THE "2008 NATURAL GAS SEVERANCE TAX FUND"; AND PROVIDING THAT ALL REMAINING AMOUNTS IN THE 2008 NATURAL GAS SEVERANCE TAX FUND SHALL THEREUPON BE DIVIDED AND DISTRIBUTED FIFTY-SIX PERCENT (56%) TO THE STATE HIGHWAY AND TRANSPORTATION DEPARTMENT FUND; TWELVE PERCENT (12%) TO THE COUNTY AID FUND; TWELVE PERCENT (12%) TO THE MUNICIPAL AID FUND; AND TWENTY PERCENT (20%) FOR SUPPLEMENTAL FUNDING FOR PUBLIC INSTITUTIONS OF HIGHER EDUCATION IN THE STATE OF ARKANSAS TO BE DISTRIBUTED BY THE DEPARTMENT OF HIGHER EDUCATION AND THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO PUBLIC INSTITUTIONS OF HIGHER EDUCATION IN ARKANSAS IN ACCORDANCE WITH THE FUNDING FORMULA FOR FOUR-YEAR PUBLIC UNIVERSITIES AND TWO-YEAR PUBLIC COLLEGES IN THE STATE OF ARKANSAS (AS SET FORTH IN SECTIONS 6-61-228 AND 6-61-229 OF THE ARKANSAS CODE); PROVIDING THAT THE ACT SHALL BE EFFECTIVE ON JANUARY 1, 2009; AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure. *Page 3 
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119
(1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 283 Ark, 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chancy v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise {see A.C.A. § 7-9-107(b)); *Page 4 
otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241,884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, I have concluded that there are two possible ambiguities that require clarification before a legally sufficient ballot title and popular name can be certified for this measure. The text of your proposed initiated act is fairly clear, but I am uncertain how to summarize these two particular points for the electorate in a ballot title for your measure. Each ambiguity involves funding for higher education. In addition, minor changes to your ballot title are also necessary, in my view, in order to more fully and correctly summarize your proposal. I have also discussed those issues below. The necessary ballot title changes primarily involve the early portions of your measure, and the ambiguities in the text of your measure occur towards the end of your proposed initiated act. For that reason, it will be helpful to address the necessary ballot title changes first. Although I am authorized, pursuant to A.C.A. §7-9-107(b), to substitute a more suitable and correct ballot title for the one proposed, I cannot, at this time, because of the two ambiguities mentioned above, fairly or completely summarize the effect of your proposed measure to the electorate in a ballot title without the clarification of the ambiguities discussed below.
With regard to the sufficiency of your proposed ballot title, the following points require mention:
 1. Your proposed measure changes and increases the amount of severance taxes levied in Arkansas, and states that "All *Page 5 
taxes, penalties, and costs collected by the Director of the Department of Finance and Administration [arising from natural gas severance taxes] shall be deposited into the State Treasury in a fund known as the "2008 Natural Gas Severance Tax Fund." See Proposed Act, Section 2(c).[1] With regard to allocation of the revenues, the text of your measure states that the "State Treasurer shall first calculate the amount of natural gas severance tax which would have been collected by the State of Arkansas based upon [the rate imposed by current law]." Section 2(c)(1). Once that amount is determined, your proposed act requires the State Treasurer to distribute it in accordance with subsection (b) of A.C.A. § 26-58-124, which remains unamended by your measure.[2] Your proposed ballot title summarizes this portion of your proposed act as follows: ". . . the amount of funds raised under the current severance tax law would continue to be distributed as set forth in current law." In my judgment uncertainty may arise in the mind of voters as to whether this summarization of your measure ("the amount of funds raised under the current severance tax law"), refers to a set dollar amount that was raised in the last year the current severance tax was levied, or whether (as your proposed act actually provides), the "amount of funds raised under the current severance tax law" refers to the amount that would have been collected by applying the current law rate on each future year's extractions. Clarification of your proposed ballot title is therefore necessary to clearly reflect to the voters the impact of your measure in this regard. *Page 6 
 2. In addition to stating that the amount of funds raised under current law "would continue to be distributed as set forth in current law," your proposed ballot title then states that "the additional revenues collected . . . from such increase in the severance tax on natural gas shall be classified as special revenues . . . and held by the State Treasurer in a fund known as the "2008 Natural Gas Severance Tax Fund. " (Emphasis added). This language might be somewhat misleading in that it implies that only the "additional revenues" are deposited into the fund in question. The funds that would be raised under the current severance tax law are also deposited under your measure in the "2008 Natural Gas Severance Tax Fund." See again. Section 2(c). Your measure provides for the initial deposit of all severance taxes on natural gas into the 2008 Natural Gas Severance Tax Fund. The amount of funds that would have been collected under current law are then distributed from the 2008 Natural Gas Severance Tax Fund to the various accounts mandated by the pre-existing subsection (b) of A.C.A. § 26-58-124. This fact is alluded to in the succeeding language of your proposed ballot title, addressing the additional funds, which states that ". . . all remaining amounts in the 2008 Natural Gas Severance Tax Fund shall thereupon be divided and distributed" as set out in your measure. (Emphasis added). Your ballot title is therefore somewhat misleading in this regard. Although this initial deposit of existing-rate revenues into the new fund, before later transfer according to pre-existing law, may not be of great concern to the voters, any certified ballot title for your measure should correctly characterize the flow of funds.
 3. With regard to distribution of the additional revenues, your measure states in Section 2(c)(2)(A) that: *Page 7 
 On the last business day of each calendar month, the State Treasurer, shall divide the special revenues into the following shares:
 (i) fifty-six percent (56%) to the State Highway and Transportation Department Fund;
 (ii) twelve percent (12%) to the County Aid Fund;
 (iii) twelve percent (12%) to the Municipal Aid Fund; and
 (iv) twenty percent (20%) to the Department of Higher Education to be distributed by such department and the Department of Finance and Administration in accordance with the funding formula for four-year universities and two-year colleges in Sections 6-61-228 and 6-61-229 of the Arkansas Code.
 After the fund is divided, the State Treasurer shall thereafter promptly distribute such amounts to the foregoing funds and agency.
 The distributions to the various funds listed in subsections (i) through (iii), as fund transfers within the State Treasury, may be accomplished without an appropriation by the General Assembly. Your measure does not address or cover the later distribution of these funds outside the State Treasury. It thus does not address their later required appropriation, or state to what precise *Page 8 
purposes the funds will be put.[3] Your proposed act merely provides for the transfer of these revenues into the designated funds, presumably for later appropriation and distribution. Your measure, however, itself requires the distribution of funds under subsection (iv) above, for higher education, outside the State Treasury. This cannot be accomplished without a separate appropriation by the General Assembly. See Arkansas Constitution, art. 5, § 29. A specific appropriation is an absolute prerequisite for the expenditure of funds out of the state treasury. Director of Bureau of Legislative Research v. Mackrell, 212 Ark. 40, 204 S.W.2d 893 (1947). Although this appropriation may of course be accomplished by separate act of the General Assembly, the fact that the funds must be appropriated should in my judgment be conveyed to the voters in a ballot title for your measure, so that the voters will not be misled into inferring that your measure is the only necessary authority for such distribution. Cf e.g., Walker v. Priest, 342 Ark. 410, 424, 29 S.W.3d 657 (2000) (upholding the ballot title for the "Tobacco Settlement Proceeds Act" where title indicated that "Program Funds" were subject to appropriation by the General Assembly). This point should therefore be made clear to the voters in any ballot title certified for your measure.
With regard to ambiguities in the text of your measure, which preclude my substitution of a more suitable ballot title at this time, I refer to the following:
 1. Your measure provides for the distribution of a portion of the increased severance tax revenues for higher education, and states, in the last sentence of Section 2(c)(2)(B), that the higher education funds "shall be distributed by such agency and the Department of Finance and Administration to public institutions of higher education in accordance with the funding formula for such institutions in effect on the date of *Page 9 this Act.'" (Emphasis added). It appears that the impact of this language is to require future distribution according to the formula in effect on January 1, 2009, and not in accordance with the formula as it may later be amended. If this is the case, I can substitute or add language in a ballot title for your measure indicating as such. I am uncertain, however, whether this is your intention, given your summation of the measure in your proposed ballot title, which merely refers to distribution of the funds in accordance with "the funding formula for four-year public universities and two-year public colleges in the State of Arkansas (as set forth in Sections 6-61-228 and 6-61-229 of the Arkansas Code).
 2. This same subsection of your measure also states that "The amount for the Department of Higher Education shall be considered supplemental funding for public institutions of higher education in the State of Arkansas. . . ." I am uncertain whether this language is merely descriptive as to the purposes to which the funds will be put (i.e., to provide additional funding for higher education), or whether your intention is that it operate as "non-supplanting" language, requiring that the funds in question not be used to "supplant" pre-existing funding for higher education. See, e.g., Ops. Att'y Gen. 2007-268; 2006-09; 2005-303; and 92-077 (each addressing initiated measures containing "non-supplanting" language). This point may give voters "serious ground for reflection" and I cannot adequately summarize your measure in a certified ballot title without being certain of the impact of this language.
In conclusion, I must emphasize that my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. *Page 10 
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, supra. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
The issues recited above prevent me from certifying your submission at this time. My statutory duty under these circumstances is to reject your proposed popular name, ballot title and petition, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed initiated act, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 11 
 POPULAR NAME "The Natural Gas Severance Tax Act of 2008" BALLOT TITLE An Act proposing that effective January 1, 2009, the severance tax onnatural gas extracted from within the State of Arkansas be increasedfrom three-tenths of one cent (3/10 of $.01) per 1,000 cubic feet toseven percent (7.0%) of the market value of such natural gas at the timesuch natural gas is extracted; providing that the amount of funds raisedunder the current severance tax law would continue to be distributed asset forth in current law; and providing that the additional revenuescollected by the State of Arkansas from such increase in the severancetax on natural gas shall be classified as special revenues of the Stateof Arkansas and held by the State Treasurer in a fund known as the "2008Natural Gas Severance Tax Fund"; and providing that all remainingamounts in the 2008 Natural Gas Severance Tax Fund shall thereupon bedivided and distributed fifty-six percent (56%) to the State Highway andTransportation Department Fund; twelve percent (12%) to the County AidFund; twelve percent (12%) to the Municipal Aid Fund; and twenty percent(20%) for supplemental funding for public institutions of highereducation in the State of Arkansas to be distributed by the Departmentof Higher Education and the Department of Finance and Administration topublic institutions of higher education in Arkansas in accordance withthe funding formula for four-year public universities and two-yearpublic colleges in the State of Arkansas (as set forth in Sections6-61-228 and 6-61-229 of the Arkansas Code); providing that the actshall be effective on January 1, 2009; and for other purposes. *Page 12 
 LANGUAGE OF THE PROPOSED INITIATED ACT BE IT ENACTED BY THE PEOPLE OF THE STATE OF ARKANSAS:
Section 1. Section 26-58-111 (5) of the Arkansas Code is herebyamended to read as follows:
(5) On natural gas, seven percent (7.0%) of the fair market value of such natural gas at the time and point of severance.
Section 2. Section 26-58-124 of the Arkansas Code is hereby amended toread as follows:
(a) All taxes, penalties, and costs collected by the Director of the Department of Finance and Administration under the provisions of this subchapter, except for the tax levied under Section 26-58-111 (5) on natural gas, shall be deposited in the State Treasury to the credit of the State Apportionment Fund. All taxes, penalties, and costs collected by the Director of the Department of Finance and Administration under the provisions of Section 26-58-111 (5) of this subchapter (on natural gas) shall be classified and distributed in accordance with the provisions of (c) of this section.
(b) On or before the fifth of the month next following the month during which funds under subsection (a) of this section shall have been received by the Treasurer of State, the Treasurer of State shall allocate the funds in the following manner:
 (1) Three percent (3%) of the amount of the funds to the General Revenue Fund Account of the State Apportionment Fund to be used for defraying the necessary expenses of the state government; and
 (2) Ninety-seven percent (97%) of the amount of the funds, as follows:
 (A) (i) All of such amount of severance taxes, penalties, and costs on timber and timber products shall be credited to the State Forestry Fund until there has been distributed to the State Forestry Fund an amount not less than the total amount of severance taxes, penalties, and costs *Page 13 
on timber and timber products distributed to the State Forestry Fund during the fiscal year ending June 30, 1980, plus an additional amount of two million dollars ($2,000,000) of the funds, to be used exclusively for the purpose of carrying out the functions and duties of the Arkansas Forestry Commission.
 (ii) (a) The next three hundred fifty thousand dollars ($350,000) or so much of the funds as may be collected in severance taxes, penalties, and costs on timber and timber products, over and above the amount distributed to the State Forestry Fund during each fiscal year as provided in subdivision (b)(2)(A)(i) of this section, shall be distributed and credited to the University of Arkansas at Monticello Fund.
 (b) The University of Arkansas at Monticello shall transfer from General Revenue to cash funds any timber severance tax funds as provided in this subdivision (b)(2)(A)(ii), to be set aside therein to be used solely and exclusively for providing additional support for the School of Forest Resources of the University of Arkansas at Monticello, as per the intent of this subdivision (b)(2)(A)(ii).
 (iii) All of such amount of severance taxes, penalties, and costs on timber and timber products collected during each fiscal year in excess of the amounts required to be distributed for each fiscal year as provided in subdivisions (b)(2)(A)(i) and (ii) of this section shall be distributed to the State Forestry Fund to be used exclusively for the support of carrying out the functions and duties of the Arkansas Forestry Commission;
 (B) Seventy-five percent (75%) of the amount of the severance taxes and penalties on diamonds shall be credited to the Arkansas State Parks Trust Fund to be used by the State Parks, Recreation, and Travel Commission for the preservation and protection of the natural resources of this state;
 (C) Seventy-five percent (75%) of the amount of the severance taxes and penalties, except those on timber and timber products and except those on diamonds, shall be general revenues and shall be allocated to the various State Treasury funds participating in general revenues in the respective proportions to each as provided by, and to be used for the *Page 14 
respective purposes set forth in the Revenue Stabilization Law, § 19-5-101 et seq.; and
 (D) (i) Twenty-five percent (25%) of such amount of the severance taxes and penalties, and costs, except those on timber and timber products, shall be special revenues and shall be allocated to the County Aid Fund.
 (ii) On or before the tenth of the month following the end of each calendar quarter, the Treasurer of State shall remit by state warrants to the various county treasurers all funds under subdivision (b)(2)(D)(i) of this section then received by him or her during the quarterly period and transferred to the County Aid Fund in the proportions of the funds as between the respective counties that, as certified by the director to the Treasurer of State, the total severance tax produced from each respective county bears to the total of the taxes produced from all counties.
 (iii) Upon receipt of any taxes under this subdivision (b)(2)(D), each county treasurer shall credit fifty percent (50%) of the amount to the county public school fund and fifty percent (50%) of the amount to the county highway fund for use for the same purposes as other moneys credited to the respective future funds.
(c) All taxes, penalties, and costs collected by the Director of the Department of Finance and Administration under the provisions of Section26-58-111 (5) of this subchapter shall be deposited in the State Treasury in a fund known as the "2008 Natural Gas Severance Tax Fund." Such revenues shall be special revenues and shall be allocated as follows:
 (1) The State Treasurer shall first calculate the amount of natural gas severance tax which would have been collected by the State of Arkansas based upon a tax rate of three-tenths of one cent (3/10 of $0.01) per one thousand cubic feet (1,000 cu. ft.) of natural gas extracted. Once this amount is determined it shall be distributed in accordance with the provisions of (b) of this section.
 (2) Thereafter all revenues remaining in the Natural Gas Severance Tax Fund shall be allocated and distributed as follows:
 (A) On the last business day of each calendar month, the State Treasurer, shall divide the special revenues into the following shares: *Page 15 
 (i) fifty-six percent (56%) to the State Highway and Transportation Department Fund;
 (ii) twelve percent (12%) to the County Aid Fund;
 (iii) twelve percent (12%) to the Municipal Aid Fund; and
 (iv) twenty percent (20%) to the Department of Higher Education to be distributed by such department and the Department of Finance and Administration in accordance with the funding formula for four-year universities and two-year colleges in Sections 6-61-228 and 6-61-229 of the Arkansas Code.
 (B) After the fund is divided, the State Treasurer shall thereafter promptly distribute such amounts to the foregoing funds and agency. The amount for the Department of Higher Education shall be considered to be supplemental funding for public institutions of higher education in the State of Arkansas and shall distributed by such agency and the Department of Finance and Administration to public institutions of higher education in accordance with the funding formula for such institutions in effect on the date of this Act.
 Section 3. This Act shall be effective for natural gas extracted from the State of Arkansas on or after January 1, 2009.
Section 4. The General Assembly shall adopt and enact any and all laws necessary to carry out the intent of this act.
Section 5. All laws and parts of laws in conflict with this act are hereby repealed.
[1] Your measure refers to, but does not itself create this fund. Presumably, the fund would be created by the General Assembly at some point after the effective date of your measure.
[2] I assume this reference to subsection (b) refers specifically to subsections (b)(1); (b)(2)(C); and (b)(2)(D), which govern the distribution of severance taxes on, among other things, natural gas, and not to subsections (b)(2)(A) or (B), which address distribution of severance taxes on timber, timber products, and diamonds.
[3] Existing statutes address the general uses of the County Aid Fund (A.C.A. § 19-5-602 (Supp. 2007)), the Municipal Aid Fund (A.C.A. §19-5-601 (Rep!. 1998)) and the State Highway and Transportation Department Fund (A.C.A. § 19-6-405 (Supp. 2007)).