Mr. Charles L. Robinson Division of Legislative Audit State Capitol, Room 172 Little Rock, AR 72201
Dear Mr. Robinson:
This is in response to your request for an opinion on fourteen questions regarding the establishment of, receipts for, and disbursements from the Drug Control Fund and various other accounts. Your questions will be restated and addressed in the order posed.
Your first question is:
 (1) Under the provisions of the United States government's Adoptive Seizure Program, proceeds from asset forfeitures are equitably shared with prosecuting attorneys and law enforcement agencies.
 A. Where should asset forfeiture proceeds from the United States" Adoptive Seizure Program be deposited when received by:
(1) Prosecuting attorneys;
(2) County law enforcement agencies; or
(3) municipal law enforcement agencies?
 B. Must funds received by prosecuting attorneys or law enforcement agencies pursuant to the Adoptive Seizure Program be appropriated, and if so, by what legislative body?
Equitable sharing of federal forfeiture funds between the federal government and state and local law enforcement agencies is authorized by 21 U.S.C. § 881(e)(1)(A) (Cum. Supp. 1991) and by19 U.S.C. § 1616(a) (Cum. Supp. 1991). Neither of these provisions dictates where such funds must be deposited when received by state and local law enforcement agencies. The only restriction placed on such funds at the federal level is that they be used for the law enforcement purposes specified in the application for transfer of the federal forfeiture funds, commonly referred to as the DAG-71. See U.S. Dept. of Justice,A Guide to Equitable Sharing of Federally Forfeited Property forState and Local Law Enforcement Agencies, p. 4 (December 1990). Although this application, which is treated like a contract between the Justice Department and the requesting agency, restricts the use of federal forfeiture money, it does not require that the money be deposited in a particular fund or account upon its receipt by a state or local law enforcement agency.
Because federal law imposes no restrictions on the deposit of federal forfeiture funds received by a state or local law enforcement agency, state law must be consulted in determining whether these funds must be deposited into a particular fund or account. Local ordinances should also be consulted, as they might provide for the deposit of such funds into a particular account. Such ordinances would be valid so long as they do not conflict with the Arkansas Constitution or provisions of state law. See
Ark. Const., Amend. 55, § 1; A.C.A. § 14-14-801 (1987).
It should be noted initially that there appears to be no general provision of state law providing for the deposit of federal forfeiture funds into a particular account upon their receipt.
You have first asked where federal asset forfeiture funds from an adoptive seizure should be deposited when received by a prosecuting attorney. In the absence of a general provision of state law governing the deposit of federal forfeiture funds, it appears that a prosecuting attorney should deposit such funds in the State Central Services Fund, a fund established on the books of the State Treasurer, the State Auditor, and the Chief Fiscal Officer of the State. See A.C.A. § 19-5-205(b)(1)(K) and -205(e)(1)(B)(vii) (Cum. Supp. 1991). Although prosecuting attorneys are required by January 1st of each year to report and pay over to the state treasurer or appropriate county treasurer all money received by them by virtue of their office during the preceding year for the use of the state or any county, see
A.C.A. § 16-21-110(a) (1987), this provision would not appear to apply to the federal asset forfeiture money in question, because the prosecuting attorney will have received that money for the use of his office rather than for the general use of the state or a county.
You have next asked where such funds should be deposited when received by a county law enforcement agency. As previously noted, there is no general provision of state law dictating where federal forfeiture funds should be deposited when received by a local law enforcement agency. Thus, in the absence of a county ordinance or any other provision of law directing that such funds be deposited in a particular fund, such as the Drug Control Fund, A.C.A. § 5-64-505(k)(4)(l) (Cum. Supp. 1991), it appears that such funds must be deposited into the agency's account described in A.C.A. § 14-25-102 (1987) and ultimately into the county treasury. See A.C.A. § 14-14-1313 (1987), which provides that all public funds coming into the possession of any county officer shall be remitted to the county treasury in a manner prescribed by law, and A.C.A. § 14-25-103(a) (1987) and A.C.A. § 21-6-310
(1987), which set out the manner prescribed by law for the deposit of such funds.
Finally, you have asked where federal forfeiture funds from an adoptive seizure should be deposited when they are received by a municipal law enforcement agency. Again, there appears to be no general federal or state law requiring the deposit of such funds into a particular account or fund. Thus, in the absence of a municipal ordinance directing the deposit of the funds into a particular account,[1] such as the Drug Control Fund, it appears that the funds should be deposited in the city's general fund, referred to in A.C.A. § 14-59-104(b) (1987). Despite its deposit into the city general fund, the use of this federal money will remain restricted to the law enforcement purposes set out in the "contract" between the Justice Department and the municipal law enforcement agency, as discussed above.
You have next asked whether funds received by prosecuting attorneys or law enforcement agencies pursuant to the Adoptive Seizure Program must be appropriated and, if so, by what legislative body. I must point out initially that any appropriations must adhere to the law enforcement purpose stated in the application for federal forfeiture funds filed by the law enforcement agency, which is treated as a contract between the agency and federal government.
As previously noted, when prosecuting attorneys receive federal forfeiture money under the adoptive seizure program, the funds should be deposited into the State Central Services Fund. That fund is established on the books of the State Treasurer, State Auditor, and Chief Fiscal Officer of the State. See A.C.A. §19-5-205(e)(1)(A) (Cum. Supp. 1991). It appears that this fund is actually in the state treasury, and as such it is subject to both Article 5, Section 29 and Article 16, Section 12 of the Arkansas Constitution, which provide that no money shall be paid out of the treasury unless appropriated by law, and then only in accordance with the appropriation. See Gipson v. Ingram,215 Ark. 812, 223 S.W.2d 595 (1949); Dickinison v. Clibourn,125 Ark. 101, 187 S.W. 909 (1916). The appropriating body for such funds would appear to be the Arkansas General Assembly. See
Ark. Const., Art. 5, § 29; Director of Bureau of LegislativeResearch v. MacKrell, 212 Ark. 40, 204 S.W.2d 893 (1947).
The issue of whether these federal forfeiture moneys must be appropriated if received by a county law enforcement agency also appears to be governed by Article 16, Section 12 of the Arkansas Constitution, which has been held applicable to counties. SeeMackey v. McDonald, 255 Ark. 978, 504 S.W.2d 726 (1974);Nevada County v. News Printing Co., 139 Ark. 502, 206 S.W. 899
(1918). See also A.C.A. § 14-14-1102(b)(2)(C)(i) (1987), which provides that no money shall be paid out of the county treasury until it has been appropriated by law and then only in accordance with the appropriation. Thus, no money may be paid out of the county treasury without an appropriation and, as previously noted, federal forfeiture funds received by county law enforcement agencies are ultimately deposited in the county treasury. Accordingly, such funds received by county law enforcement agencies must be appropriated. The appropriating body for funds in the county treasury is the quorum court. See
A.C.A. § 14-14-801(b)(2) (1987) and A.C.A. § 14-14-904(b) (Cum. Supp. 1991).
With respect to whether federal forfeiture money received by municipal law enforcement agencies must be appropriated, I have been unable to find a provision expressly stating that no money may be taken from the city treasury without an appropriation. Additionally, Article 16, Section 12 of the Arkansas Constitution apparently has not yet been found applicable to municipalities. Nevertheless, other provisions of Arkansas law appear to contemplate the appropriation of money in the city treasury. For example,
A.C.A. § 14-42-308(a) (1987) requires that the governing body of each municipality operating under a charter to prepare, approve, and publish annually a proposed budget of operational expenditures of the municipality for the forthcoming year. Other provisions state that approval of the budget by the governing body of the municipality shall amount to an appropriation of the funds that are lawfully applicable to the different items contained in the budget. See, e.g., A.C.A. § 14-47-125
(1987); A.C.A. § 14-48-122(a) (1987); and A.C.A. § 14-58-203
(1987). In addition, A.C.A. § 14-46-244 (1987) refers to ordinances or resolutions appropriating money. Thus, it is my opinion that federal forfeiture funds received by municipal law enforcement agencies must be appropriated before they can be removed from the city treasury. The appropriating body for funds in a city treasury would appear to be the governing body of the municipality, such as the city council or the board of directors, depending upon the form of government the municipality has adopted. See, e.g., A.C.A. 14-47-125 (1987); A.C.A. §14-48-122(a) (1987); and A.C.A. § 14-58-203 (1987).
Your second question is:
 (2) Does the phrase "created on the books of law enforcement agencies and attorneys for the state" permit a county law enforcement agency to establish a separate bank account for the Drug Control Fund, or does the phrase require the deposit of Drug Control Funds for a county law enforcement agency into a separate fund established in the county treasury?
In my opinion, the phrase "created on the books of law enforcement agencies and attorneys for the state" does not entitle a county law enforcement agency to establish a separate bank account ++++for its Drug Control Fund. Rather, it merely creates that fund on the books for the law enforcement agency maintained in the county treasury. As I explained in Opinion No.91-407, issued by this office on January 22, 1992, although county offices are entitled to maintain a separate bank account, described in A.C.A. § 14-25-102 (1987), into which all public funds the office receives are initially deposited, county officers are required to remit to the county treasury each month all public funds coming into their possession. See A.C.A. §14-14-1313 (1987); A.C.A. § 21-6-310 (1987). Additionally, it was concluded in Opinion No. 91-407 that, other than in limited circumstances specifically provided by law, county officers are generally prohibited from disbursing funds from a bank account outside the county claims process. Accordingly, it appears that the Drug Control Fund should be established on the books of the county law enforcement agency in the county treasury and any money directed to that fund should go into the county office's bank account described in A.C.A. § 14-25-102 (1987) initially and then into the county treasury, in accordance with § 14-14-1313
and § 21-6-310.
Your third question is:
 (3) A.C.A. § 5-64-505 provides that the Drug Control fund consists of all moneys obtained under subsection (1) [confiscated drug moneys] and other revenues as may be provided by law or ordinance.
 A. Unless specifically permitted by state law, in criminal drug cases, does a circuit judge have the authority to order fines, costs, contributions, restitution, or other moneys, other than moneys confiscated in accordance with A.C.A. § 5-64-505, to be deposited into a Drug Control Fund?
 B. In a criminal drug case, is there authority for a circuit judge to order fines, costs, contributions, restitution, or other moneys, other than moneys confiscated in accordance with A.C.A. § 5-64-505, to be deposited into a Drug Control Fund? [Emphasis original.]
The Drug Control Fund consists of all moneys obtained under subsection (k)(1) of A.C.A. § 5-64-505 (Cum. Supp. 1991), and other revenues as may be provided by law or ordinance. Thus, even in the absence of a specific provision of state law directing that certain fines, fees, costs, etc., be paid into the Drug Control Fund, a local ordinance may provide that certain such moneys shall go into the Fund. As long as such an ordinance is not otherwise in violation of state law, it would be valid and would give a circuit judge authority to direct such revenues to the Drug Control Fund. In the absence of either a state law or local ordinance providing for a specific fine, court cost, or other money to be placed into the Drug Control Fund, however, it would not appear that a circuit judge could order such moneys to be deposited into the Fund. Indeed, in the absence of state law to the contrary, the legislature has declared that all fines, penalties, and forfeitures imposed by a court, other than city or police courts, shall be paid into the county treasury for county purposes. See A.C.A. § 16-92-113(a) (1987). As far as restitution is concerned, it is to be made to victims of crime and should be paid to the victims or deposited in the restitution fund of the judicial district. See A.C.A. §§ 16-90-301 -308 (1987). Accordingly, a circuit court would, in my opinion, have no authority to direct restitution payments to the Drug Control Fund.
In my opinion, the above response to question 3.A. answers question 3.B. as well. I am aware of no authority, independent of state law or local ordinance, for a circuit judge, in a criminal drug case, to order fines, costs, restitution, or any moneys other than those confiscated in accordance with A.C.A. § 5-64-505
(Cum. Supp. 1991) to be deposited into a Drug Control Fund.
Your fourth question is:
 (4) What disbursement procedures are necessary for Drug Control Funds established for:
A. Prosecuting attorneys;
B. County sheriffs; and
C. Municipal police departments?
As to prosecuting attorneys, the answer to this question depends initially upon whether the Drug Control Fund is a fund in the state treasury or whether it is a "cash fund." The term "cash fund" is defined in A.C.A. § 19-4-801(2) (1987) as "all moneys, negotiable instruments, certificates of indebtedness, stocks, and bonds held or owned by any state agency which are not on deposit with or in the trust of the State Treasurer." The term has been defined by the Arkansas Supreme Court as those funds received by state agencies and institutions from sources other than taxes, as the term "taxes" is ordinarily used. See Gipson v. Ingram,supra. Arkansas Code Annotated § 5-64-505(k)(4) (Cum. Supp. 1991) provides:
 (i) There is created on the books of law enforcement agencies and attorneys for the state a Drug Control Fund. The Drug Control Fund shall consist of all moneys obtained under subsection (1) and other revenues as may be provided by law or ordinance. Moneys from the fund may not supplant other local, state, or federal funds. Moneys in this fund are appropriated on a continuing basis and are not subject to the Revenue Stabilization Law, § 19-5-101
et seq. Moneys in this fund must only be used for law enforcement and prosecutorial purposes. The fund is subject to audit by the Division of Legislative Audit.
 (ii) The law enforcement agencies and attorneys for the state shall submit to the State Drug Director on or before January 1 and July 1 of each year a report detailing all moneys received and expenditures made from the Drug Control Fund during the preceding six-month period.
The language set out above, in my opinion, indicates that the Drug Control Fund is a "cash fund" rather than a fund actually located in the State Treasury. For instance, the moneys in the Fund are appropriated on a continuing basis and are not subject to the Revenue Stabilization Law. Additionally, the fund is subject to audit by the Division of Legislative Audit and a biannual report detailing receipts into and expenditures from the Drug Control Fund must be made to the State Drug Director. Accordingly, it is my opinion that the Drug Control Fund is a "cash fund" and that the disbursement procedures governing "cash funds" rather than those governing money in the State Treasury must be consulted in determining the disbursement procedures prosecuting attorneys must adhere to in disbursing money from the Fund.
The procedures governing the expenditure of cash funds are set out in A.C.A. § 19-4-801 -816 (1987 and Cum. Supp. 1991). These provisions appear to apply only to state agencies as that term is defined in A.C.A. § 19-4-801 (1987). See A.C.A. § 19-4-802
(1987). Prosecuting attorneys are specifically excluded from the definition of state agencies set out in A.C.A. § 19-4-801(1) (1987). Accordingly, prosecuting attorneys appear to be exempt from the disbursement procedures set out in A.C.A. §§ 19-4-801
-816 (1987 and Cum. Supp. 1991).
As I am aware of no other disbursement procedures applicable to "cash funds," such as the Drug Control Fund, it appears that there are no set disbursement procedures for prosecuting attorneys to follow in using the Drug Control Fund. It should be noted, of course, that A.C.A. § 5-64-505(k)(4)(i) and (ii) (Cum. Supp. 1991) provide for some monitoring of the use of the Drug Control Fund. First of all, the fund may be used only for law enforcement and prosecutorial purposes. Additionally, as has already been noted, the Fund is subject to audit by the Division of Legislative Audit and a report of the receipts into and the expenditures from the Fund during the preceding six-month period must be filed with the State Drug Director biannually.
You have next asked about the disbursement procedures that county sheriffs are required to follow in using the Drug Control Fund. Despite the fact that the language of A.C.A. § 5-64-505(k)(4) indicates that the Drug Control Fund may be operated as a "cash fund," the provisions noted above in response to your second question would appear to preclude a county sheriff from operating the Fund as a "cash fund." As noted previously, county officers are required by A.C.A. §§ 14-14-1313 and 21-6-310 (1987) to remit to the county treasury each month all public funds coming into their possession, which would appear to include moneys received into the Drug Control Fund. As the county sheriff's Drug Control Fund moneys will ultimately end up in the county treasury, the general disbursement procedures established for the use of money in the county treasury would appear to apply. These procedures, set out at A.C.A. §§ 14-23-101 to 14-24-206 (1987), are described generally in Opinion No. 91-407, a copy of which is enclosed with this Opinion.
It is not as clear what disbursement procedures must be followed by municipal police departments in using the Drug Control Fund. Again, it depends initially upon whether the Drug Control Fund may be operated as a "cash fund" or whether the moneys going into the Drug Control Fund are required to be deposited in the municipal treasury. I have found no provision requiring municipal officials or police officers to turn over to the municipal treasury all public funds coming into their possession, as is required of county officials, nor am I aware of other statutory prohibitions against a municipal police department operating a "cash fund." Thus, it would appear that the Drug Control Fund may be operated by a municipal police department as a "cash fund." Accordingly, the procedures set out in A.C.A. § 14-58-305 (1987) for payment of claims against a municipality and in A.C.A. §14-59-105 (1987) for the disbursement of municipal funds would not appear to apply. Further, the disbursement procedures for "cash funds" set out in A.C.A. §§ 19-4-801 -816 (1987 and Cum. Supp. 1991) and referred to previously in this opinion apply only to state agencies as defined in A.C.A. § 19-4-801 (1987). See
A.C.A. § 19-4-802 (1987). Obviously, this would not include municipal police departments.
In the absence of other disbursement procedures applicable to the expenditure of "cash funds" operated by a municipal police department, it would appear that the Drug Control Fund may be operated by such agencies with only the restrictions provided by A.C.A. § 5-64-505(k)(4)(i) and (ii) (Cum. Supp. 1991). As noted previously, these restrictions are that the moneys in the Fund be used only for law enforcement and prosecutorial purposes, that the Fund is subject to audit by the Division of Legislative Audit and that such agencies must file a report with the State Drug Director biannually, listing all receipts into and expenditures from the Fund.
Your fifth question is:
 (5) A. Are the moneys paid into a Drug Control Fund considered public funds?
 B. If the answer to question 5.A. is "yes," are funds deposited into a Drug Control Fund for a county law enforcement agency considered county funds?
 C. If the answer to question 5.B. is "yes," must the county judge approve the disbursements of these funds?
 D. If the answer to question 5.C. is "yes," are these funds restricted for the use of the county law enforcement agencies, and disbursements of these funds made only when the disbursement process is initiated by the county law enforcement agency?
In response to question 5.A., it is my opinion that the moneys paid into a Drug Control Fund are considered public funds. The term "public funds" is defined in A.C.A. § 19-8-101 (1987), which deals with depositories for public funds, as "any and all kinds of funds handled by treasurers, collectors, commissioners, sheriffs, and clerks." It is defined in A.C.A. § 19-8-202 (1987), regarding security for the deposit of public funds, as meaning, but not being limited to, funds of:
 (1) The State of Arkansas, or any agency, department, board, commission or instrumentality thereof;
 (2) Any political subdivision of the State of Arkansas, or any agency thereof;
(3) Any school board or school district;
 (4) Any improvement or other taxing or assessing district; and
 (5) Any public corporation or authority created by or recognized by the State of Arkansas, or any political subdivision thereof.
Finally, "public funds" are defined in Black's Law Dictionary
as "moneys belonging to government, or any department of it, in hands of public official." See Black's Law Dictionary 1106 (5th ed. 1979). Moneys deposited into the Drug Control Fund of a prosecuting attorney or a county or municipal law enforcement agency would appear to come within the above definitions of "public funds."
In response to question 5.B., it is my opinion that funds deposited into the Drug Control Fund for a county law enforcement agency should be considered county funds, although they retain the restriction of A.C.A. § 5-64-505(k)(4)(i) (Cum. Supp. 1991) that they be used only for law enforcement or prosecutorial purposes. As noted previously herein, such funds received by a county law enforcement agency must ultimately be deposited into the county treasury and thus, should be considered county funds.
In answer to question 5.C., it is my opinion that the county judge must approve the disbursement of these funds, just as he or she must approve the disbursement of all appropriated county funds. See Ark. Const., Amend. 55, § 3; A.C.A. §14-14-1102(b)(2) (1987).
In response to question 5.D., it is my opinion that the moneys in the Drug Control Fund of a county law enforcement agency, although physically located in the county treasury, are restricted to the use of the county law enforcement agency in whose name they were deposited. This appears to be contemplated and indeed required by A.C.A. § 5-64-505(k)(4)(i) (Cum. Supp. 1991). Disbursement of such funds, accordingly, may only be made when the disbursement process is initiated by the particular county agency for the purchase of goods or services in accordance with the provisions regarding county purchasing and the payment of claims against the county. See generally A.C.A. §§14-22-101 to 14-25-115 (1987).
Your sixth question is:
 (6) A. Where property has been confiscated and forfeited pursuant to the provisions of A.C.A. § 5-64-505, and subsequently, the law enforcement agency or attorney for the state, pursuant to court order, has been permitted to retain the forfeited personal property for official use of the office:
 (1) May the law enforcement agencies immediately dispose of the forfeited property or must they obtain a circuit court order to dispose of the forfeited property?
 (2) What are the proper methods to sell or otherwise dispose of the property?
 B. Where should the proceeds from the sale of forfeited property by the various law enforcement agencies or attorney for the state be deposited? [Emphasis original.]
In response to question 6.A.(1), while disposal of forfeited property by a law enforcement agency or prosecuting attorney immediately after a circuit court order permitting the agency to retain the property for official use does not appear to be contemplated by A.C.A. § 5-64-505(k) (Cum. Supp. 1991), I can find nothing in the statute prohibiting it. My reading of the applicable provisions indicates that after entering an order permitting a law enforcement agency to retain forfeited property for official use, the circuit court's jurisdiction over the property ends. Accordingly, it would not be necessary to obtain an order of that court prior to disposing of the property in this situation. Nevertheless, the property should be disposed of in accordance with the applicable sale procedures discussed below.
The proper procedures to follow in disposing of forfeited property retained by a prosecuting attorney or law enforcement for official use depends initially upon whether the property retains its status as forfeited property or becomes general state, county, or municipal property. If the property retains its status as forfeited property, it should be disposed of in accordance with A.C.A. § 5-64-505(k)(1) (Cum. Supp. 1991). If it becomes the general property of the agency permitted to retain it, which, in my opinion, is the better view, then it attains the status of state, county, or municipal property, depending upon the particular agency involved, and must be disposed of in accordance with the procedures prescribed by law for disposal of that type of property.
For example, if a prosecuting attorney is permitted to retain the property, it should be characterized as state property, because prosecuting attorneys are state constitutional officers. SeeMartindale v. Honey, 259 Ark. 416, 533 S.W.2d 198 (1976). Accordingly, any sale of the property should be in compliance with the procedures set out for the sale of personal property of the state. See A.C.A. §§ 19-4-1503 and 25-8-106 (1987). If the property is retained by a county law enforcement agency, it would become county property and should be disposed of in accordance with the procedures established for the sale of county property, which appear to include obtaining an order of the county court authorizing the sale of the property. See A.C.A. § 14-16-105
(1987). Similarly, the disposal of forfeited property retained for official use by a municipal law enforcement agency should be in accordance with the general procedures established for the sale of municipal property. See generally A.C.A. §§ 14-54-302
and 14-58-308 (1987).
You have next asked where the proceeds from the sale of property forfeited by various law enforcement agencies or the prosecuting attorney should be deposited. For purposes of anwering this question, I am assuming you are concerned with the sale of forfeited property that was initially permitted to be retained by a prosecuting attorney or law enforcement agency.[1] The answer to this question depends upon the entity selling the property. If the property is sold by the prosecuting attorney, it appears that the proceeds should be deposited in accordance with the provisions governing the sale of state personal property. The applicable provisions indicate that the proceeds from the sale of such property should be deposited in the state treasury, classified as nonrevenue receipts, and be credited to the Property Sale Holding Fund. See A.C.A. § 25-8-106(e) (1987). If the property is sold by a county law enforcement agency, A.C.A. §14-16-105(d)(2)(iv) (1987) indicates that the proceeds from the sale of the property should be deposited in the county treasury, although no particular fund is indicated. With regard to property sold by a municipal law enforcement agency, neither A.C.A. §14-54-302 (1987) nor § 14-58-308 (1987) specifies where the proceeds should be deposited. Accordingly, it appears that the proceeds from such a sale should be deposited in the general fund of the municipality, referred to in A.C.A. § 14-59-104(b) (1987), absent a municipal ordinance or resolution specifying otherwise.
Your seventh question is:
 (7) May a county quorum court pass an ordinance which allows a circuit judge, in a drug case, to order fines, costs, penalties, "contributions," or fees to a bank account for the operations of a county office? [Emphasis original.]
In my opinion, a county quorum court would not be authorized to pass an ordinance allowing a circuit judge, in a drug case, to order such moneys to be deposited in a bank account outside the county treasury for the operation of a county office. Such an ordinance would appear to be inconsistent with several provisions of state law that have been discussed previously in this opinion and that are noted in your opinion request, such as the provisions requiring that all public funds coming into the possession of county officers, deputies, and employees be deposited into the county treasury and that the county judge approve the disbursement of all appropriated county funds, not to mention the provision requiring that all fines, penalties, and forfeitures imposed by a court other than city or police courts be deposited in the county treasury. See generally Ark. Const., Amend. 55, § 3; A.C.A. § 14-14-1102(b)(2) (1987); A.C.A. § 14-14-1313 (1987); A.C.A. § 16-92-113(a) (1987); and A.C.A. §21-6-310 (1987). See also Atty. Gen. Op. No. 91-407. As noted in your opinion request, county quorum courts may not exercise legislative authority in any manner inconsistent with state law.See A.C.A. § 14-14-808(a) (1987); Kollmeyer, Clerk v. Greer,267 Ark. 632, 593 S.W.2d 29 (1980).
Your eighth question is:
 (8) May a county judge approve the disbursements (or transfer) of appropriated county funds for deposit into an undercover operations fund, where the fund is maintained in a bank account administered by the county law enforcement agency and, therefore, the county judge will not approve the ultimate disposition of the funds? [Emphasis original.]
This action by the county judge would appear to be inconsistent with provisions of law discussed previously in this opinion and in detail in Opinion No. 91-407. Accordingly, it is my opinion that the county judge may not lawfully undertake it.
Your ninth question is:
 (9) Unless specifically allowed by state law, does a circuit judge, prosecuting attorney, county sheriff, or other public official have the authority to establish a bank account, where the establishing officer has sole authority and discretion in the disbursement of funds, to be used for the operations of a public office?
My research on this issue indicates that no public official would be authorized to establish such an account and administer it in this manner in the absence of legislative authority for the actual establishment of the account (like the Drug Control Fund established in A.C.A. § 5-64-505(k)(4) (Cum. Supp. 1991). Additionally, there would have to be either legislative authority for the particular official to establish and operate accounts in such a manner (as with respect to the "cash fund" accounts discussed previously in this opinion), or at least no legislation prohibiting the official from operating an account in such a manner. As noted previously herein, because of the existence of countervailing provisions, even the statutory establishment of an account such as the Drug Control Fund would not appear to authorize county officials to operate the Fund as a separate bank account with sole control over the disbursement process.
Your tenth question is:
 (10) Is there authority for a circuit judge, prosecuting attorney, county sheriff, or other public official to establish a bank account, where the establishing officer has sole authority and discretion in the disbursement of funds, to be used for the operations of a public office?
As noted in response to question nine, there appears to be no general authority for public officials to establish and operate separate bank accounts in this manner. Certain state agencies, entities, and departments, including circuit judges and prosecuting attorneys, may operate "cash funds," as discussed previously herein, which are operated, to some extent, in this manner. See A.C.A. §§ 19-4-801 -816 (1987 and Cum. Supp. 1991). In fact, circuit judges and prosecuting attorneys are specifically exempted from the provisions governing expenditures from cash funds. See A.C.A. § 19-4-801 (1987). Thus, provided there is independent authority for the establishment of the account or fund in question, these officials apparently would be permitted to operate it in the proposed manner. As noted previously in this opinion, however, county officials would appear to be prohibited from establishing and operating this type of account. As far as other public officials are concerned, the answer to your question would necessarily depend upon the particular official involved and, again, upon the existence of legislative authority both for the establishment of such an account and for the particular official to administer such an account.
Your eleventh question is:
 (11) Absent specific state laws to the contrary, must all fines, fees, penalties, forfeitures, and other public funds adjudged against defendants in circuit court and received or collected by a county officer be deposited into the county general fund maintained by the county treasurer? [Emphasis original.]
Based on A.C.A. §§ 16-92-113(a) and 21-6-310 (1987), both of which are set out in full in your opinion request, the answer to this question appears to be "yes."
Your twelfth question is:
 (12) A. In a criminal case, must a circuit judge, or any other judge, have state statutory authority to impose fines, costs, sentences, fees, restitution, contributions, or any other penalties?
 B. In a criminal case, is a circuit judge, or other judge, limited to the amounts of fines, costs, sentences, fees, restitution, contributions, or any other penalties provided by law?
 C. In a criminal case, may a circuit judge order moneys to be paid in lieu of fines, costs, sentences, fees, restitution, contributions or other penalties or assessments to be paid into a separate bank account maintained by the circuit judge, prosecuting attorney, sheriff, or other official?
 D. Does a circuit judge have the authority to approve a plea bargain arrangement where, as a condition of probation or reduced sentence, the defendant must make a "contribution" to a Drug Control Fund or other cash fund?
 F. In a criminal case, is there any authority for a judge to require the payment of a "contribution?" [Emphasis added.]
After researching this question, I have determined that any attempt to address it would violate this office's longstanding policy against rendering opinions on matters in litigation. The questions you have posed have been directly raised or are implicated in several lawsuits pending throughout the state. These cases include Brooks v. City of Sherwood, Pulaski County Chancery Court No. 91-3870; Robinson, et al. v. City of LittleRock, Pulaski County Chancery Court No. 91-2526; Bethany, etal. v. City of West Memphis, Crittenden County Chancery Court No. E 91-324; Nelson, et al. v. City of Texarkana, Miller County Chancery Court No. E 91-310-2; Stidham, et al. v. City ofSpringdale,
Washington County Chancery Court No. E 91-767; Williamson, etal. v. City of Russellville, Pope County Chancery Court No. 91-271; Crump, et al. v. City of Jonesboro, Craighead County Chancery Court No. E 91-262; and Southerland, et al. v. City ofConway, Falkner County Chancery Court No. E 91-357.
Our policy against issuing opinions on matters in litigation is compelled, primarily, by the separation of powers doctrine. See
Ark. Const., Art. 4, §§ 1 and 2. The judicial power of the state is vested in the courts. Ark. Const., Art. 7, § 1. Questions raised in judicial proceedings are properly addressed in that forum, pursuant to the courts" power and duty to interpret the law as enacted by the General Assembly. An opinion from this office would, under such circumstances, constitute little more than an executive comment on matters appropriately within the judicial branch. Nothing short of a final decision by the proper court can resolve such matters.
Your 13th question is:
 (13) A. Does a quorum court have the authority, by ordinance, to establish an "Undercover Operations Fund," maintained in a bank account which is administered by the Sheriff?
 B.If the answer to question 13.A. is "yes," may the Fund receive moneys from the following sources:
 (a) donations from private individuals and/or organizations;
(b) court ordered restitution in criminal cases;
(c) court ordered forfeitures in a criminal cases;
 (d) court ordered defendant contributions to the fund in criminal cases; and
 (e)any federal or state funds available for such operations not inconsistent with the purposes of the Undercover Operations Fund?
In response to question 13.A., it must be noted that in Opinion No. 90-109, issued on November 15, 1991, this office opined that a county quorum court may establish an "undercover operations fund," but stated that such a fund would be subject to the general requirements for the disbursement of funds appropriated by county quorum courts. These general requirements, which have been discussed in this opinion, would appear to prohibit the independent administration of such an account by a county sheriff. Opinion No. 91-407, referred to previously in this opinion, explains more thoroughly why a county official could not lawfully operate such a fund as a separate bank account; rather, it should be maintained as a separate fund in the county treasury.
The answer to question 13.A. appears to render question 13.B. moot.
Your fourteenth and final question is:
 (14) A. May a circuit judge order a defendant in a criminal case, through plea agreements or otherwise, to pay money to the court, which is subsequently placed in a bank account maintained by the circuit judge for a county work release program?
 B. If the answer to question 14.A. is "yes," what is the legislative authority for the assessment of such a payment?
 C. If a circuit judge may order a defendant in a criminal case to pay moneys to the court for the benefit of a county work release program, must those moneys be deposited with the county treasurer?
 D. Must there be state legislative authority for all fees, fines, costs, penalties, "contributions," or other court ordered payments to a political subdivision?
In response to question 14.A., I must note that your opinion request does not refer to a particular county work release program and speaks only generally of a payment of money to the court. While I am aware of no provision authorizing a circuit judge to take such action, without more information regarding the particular circumstances involved, I cannot answer your question definitively.
With respect to question 14.B., as I stated in response to question 14.A., I am aware of no legislative authority for the assessment of such a payment by a circuit judge.
In response to question 14.C, again, I must state that I am unaware of any authority for a circuit judge to order a defendant in a criminal case to pay moneys to the court for the benefit of a county work release program. I cannot address question 14.D., as it is implicated in the litigation referred to in my response to question 12.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
Winston Bryant Attorney General
CCT/WB:ch
[1] Such a municipal ordinance would appear to be authorized by A.C.A. § 14-55-101 (1987).
[1] If you are referring to forfeited property that is initially ordered to be sold by the circuit court, the proceeds from the sale should be deposited in the special asset forfeiture fund of the attorney for the state, for ultimate distribution as set out in A.C.A. § 5-64-505(k) (Cum. Supp. 1991).