The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, AR 72104
Dear Senator Faris:
You have requested my opinion concerning certain issues that have come to light as a result of a legislative audit of the management of certain funds by the Arkansas Employment Security Division.
You have provided the following background information, based on the audit report:
 On August 4, 2003, the functions of various Employment Security Division (ESD) organizational units were transferred by ESD management to the Workforce Investment Board (WIB), and the ESD employees who were performing these functions at local level ESD offices began reporting directly to the WIB on November 3, 2003. However, these employees remained subject to ESD rules and personnel policies, and ESD retained certain managerial responsibilities related to employees, including performance evaluations, travel expense authorization, and leave time approval. The audit documented 198 ESD employees reporting directly to the WIB, with 56 employees working at the WIB main office and 142 employees working in local level ESD offices. Apparently, this transfer was undertaken in an effort to comply with the federal Workforce Investment Act of 1998.
In addition to the above information, you have provided the following background information about a related matter, also based on the audit report:
 The Employment Security Special Fund (Special Fund) was established by Act 1073 of 1993 and is codified at A.C.A. § 19-5-984. The Director of the ESD is given the authority to approve the use of the Special Fund for certain purposes, specified in the Act. During the period July 1, 2002 through April 13, 2004, cash expenditures totaling $11,586,740.00 were made from the Special Fund. The audit revealed that Jason Brady, Deputy Director of ESD, is currently serving as the Director of the Washington, D.C. Office of the Governor. Mr. Brady's annual salary, which is currently $94,876.00, is paid from funds transferred from the Special Fund to the ESD Trust Fund.
In light of the foregoing background information, you have presented the following questions:
 (1) Was it constitutionally permissible for ESD to transfer the operational control of employees to WIB without first obtaining legislative approval? Was the subsequent payment of salaries by ESD for the affected employees constitutionally permissible?
 (2) Was the payment of Mr. Brady's salary as Director of the Washington, D.C. Office of the Governor out of ESD Special Fund monies in conflict with the Arkansas Code or the Arkansas Constitution?
RESPONSE
Question 1 — Was it constitutionally permissible for ESD to transfer theoperational control of employees to WIB without first obtaininglegislative approval? Was the subsequent payment of salaries by ESD forthe affected employees constitutionally permissible?
It is my opinion, as discussed more fully below, that ESD's act of transferring the responsibility of exercising "operational control" of ESD employees to WIB without obtaining legislative approval, but retaining ultimate control over them as ESD employees, was constitutionally permissible. However, it is my opinion that this transfer was statutorily impermissible, because WIB does not have the statutory authority to exercise the functions given to it through the transfer. It is my opinion further that ESD's payment of the affected employees' salaries after the transfer was not only permissible, but was constitutionally required.
ESD's transfer of the employees raises a question about the applicability of Article 16, § 4 of the Arkansas Constitution, which states:
§ 4. Salaries and fees of state officers.
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
Ark. Const., Art. 16, § 4.
The above-quoted constitutional provision unequivocally grants the General Assembly the authority to determine the number of employees of the departments of the State. The Arkansas Supreme Court has specifically held that the authority granted in Article 16, § 4 rests exclusively with the General Assembly and cannot be delegated to any other individual, officer, or board. See Director of Bureau of Legislative Research v.Mackrell, 212 Ark. 40, 204 S.W.2d 893 (1947), citing Nixon v. Allen,150 Ark. 244, 234 S.W. 45 (1921). Thus, it would be constitutionally impermissible for ESD to designate certain of its employees to become employees of WIB (or any other department of the State).
Nevertheless, although ESD did transfer certain of its employees to the "operational control" of WIB, it does not appear that these ESD employees actually became employees of WIB. Although it is not entirely clear precisely what is entailed in the "operational control" WIB exercises over these employees, it is clear that ESD retained significant control over these employees. Moreover, the particular type of control that it retained — the continued governance of these employees by ESD rules and personnel policies, the continued managerial responsibilities of ESD over these employees, including performance evaluations, travel expense authorization, leave time approval, and the continued payment of their salaries out of ESD's appropriations — is precisely the type of control that an employer exercises over its own employees. Although WIB may exercise some type of "operational control" over these employees, it clearly does not exercise the type of ultimate control that only an employer can exercise over its employees. It appears that ESD continues to exercise a significant amount of that type of control over them. Accordingly, it appears that these employees continue to be employees of ESD. For this reason, I conclude that ESD's transfer of these employees to the operational control of WIB was constitutionally permissible and did not violate Article 16, § 4.
However, it is my opinion that the transfer was nevertheless impermissible, because WIB does not have statutory authority to exercise "operational control" over ESD employees or to implement ESD programs.
The Workforce Investment Act of 1999 (A.C.A. § 15-4-2201 et seq.) created the WIB and delineated its powers. Those powers are set forth at A.C.A. § 15-4-2206. That statute lists numerous activities in which the WIB is expected to engage, but these are all limited to the scope of "advis[ing] and assist[ing] the Governor and the General Assembly." A.C.A. §15-4-2206(a). These listed activities all involve the development by the WIB of plans, recommendations, evaluations, reports, and rules and regulations. As noted previously, it is not entirely clear what is entailed in the "operational control" WIB exercises over the affected ESD employees, but it is clear that it would entail at least some day-to-day management of the employees in the implementation of programs. None of the activities listed in A.C.A. § 15-4-2206 can be construed to involve the day-to-day management of employees or oversight of the implementation of programs. For this reason, I must conclude that WIB does not have statutory authority to exercise "operational control" over any ESD employees or their activities in implementing programs. Accordingly, it is my opinion that ESD's act of transferring such authority to the WIB was impermissible.
You also asked about ESD's continued payment of the affected employees' salaries. Because the ESD employees who were affected by the transfer appear to have remained employees of ESD, it was not only permissible, but was constitutionally required for ESD to continue to pay their salaries.
Two constitutional provisions require this result. The first is Article 16, § 4, discussed above, which exclusively authorizes the General Assembly to determine the number of employees of each department and their salaries. Because the General Assembly alone can determine the number of employees of each department and their salaries, the General Assembly would have originally appropriated the funds for these individuals' salaries as ESD employees. Thus, any payment of their salaries by a department or agency other than ESD, as dictated by the General Assembly's appropriation for ESD, would contravene Article 16, § 4.
Moreover, payment of these salaries by a department or agency other than ESD would also violate Article 5, § 29 of the Arkansas Constitution, which states:
§ 29. Appropriations.
 No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.
Ark. Const., Art. 5, § 29.
Because the affected employees apparently remained ESD employees, they can only be paid out of ESD's funds. Payment of these employees' salaries out of any other department's or agency's appropriation would directly violate the provisions of Article 5, § 29.
For these reasons, I conclude that ESD was constitutionally required to continue to pay the affected employees' salaries out of the funds made available to ESD for that purpose.
Finally, I must note that the federal Workforce Investment Act of 1998 (29 U.S.C. § 2811 et seq.) made federal funding for workforce development available to states that complied with certain criteria. One of those criteria was a requirement that the state formulate a state plan that would avoid duplication of efforts among agencies and programs involved with workforce development. See 29 U.S.C. § 2822. However, the federal Act did not require the specific transfer that ESD implemented. Moreover, the federal Act required the formation of a state workforce investment board and outlined the responsibilities of that board. See29 U.S.C. § 2821. The state board's responsibilities as listed in the Act are essentially those that are set forth in A.C.A. § 15-4-2206, discussed above, and do not include functions that could be classified as employee management or program implementation. I mention these aspects of the federal Act for the purpose of showing that ESD's transfer of its employees to the "operational control" of WIB was not a requirement for compliance with the federal Act.
Question 2 — Was the payment of Mr. Brady's salary as Director of theWashington, D.C. Office of the Governor out of ESD Special Fund monies inconflict with the Arkansas Code or the Arkansas Constitution?
I note as an initial matter that it is my understanding that Mr. Brady is still deemed to be Deputy Director of ESD and an employee of ESD. It is unclear why Mr. Brady's salary as Deputy Director of ESD is paid from the ESD Special Fund. ESD's appropriation act providing for its employees' salaries for the 2003-2005 biennium (Act 1613 of 2003) lists a slot for the Deputy Director, at a salary of $94,876.00. This Act does not specifically indicate, however, from which particular fund this salary is payable.
In any event, it is my opinion that the payment of Mr. Brady's salary as Director of the Washington, D.C. Office of the Governor out of ESD Special Fund monies conflicts with both the Arkansas Constitution and the Arkansas Code. As explained below, these conflicts arise out of the purpose of the Governor's Washington, D.C. Office.
The use of ESD funds to pay Mr. Brady's salary is problematic under the two constitutional provisions discussed previously in response to Question 1: Article 16, § 4 and Article 5, § 29 of the Arkansas Constitution.
Again, Article 16, § 4 states:
§ 4. Salaries and fees of state officers.
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
Ark. Const., Art. 16, § 4.
As noted, the conflict with this provision arises out of the purpose of the Governor's Washington, D.C. Office. The Governor's Policy Directive concerning the Washington, D.C. Office of the Governor is No. GPD-14. That policy directive states: "The objective of the Washington, D.C., office ("Washington Office") of the Governor of Arkansas is to support state agencies in obtaining federal grants for their agencies and programs and to generate increased federal revenue. The office will also assist Arkansas' Congressional delegation and state government leaders in promoting good federal and state relations." The directive goes on to set forth procedures by which the concerns of all state agencies will be submitted to the Governor's Washington, D.C. Office.
In light of the fact that the Governor's Washington, D.C. Office has a broad objective of serving the needs of all state agencies, it is clear that Mr. Brady, in his role as Director of that Office, clearly must perform functions that extend beyond matters pertaining to ESD. The Governor's use of the employee of one department of state government to perform the functions of other departments of state government amounts, in essence, to a re-designation by the Governor of the number of employees of the departments of state government, in direct contravention of Article 16, § 4. The Governor has re-designated Mr. Brady to serve not only ESD, but also all other state agencies. Under Article 16, § 4, only the General Assembly can make such a re-designation.
Moreover, the use of ESD funds to pay the salary of an employee who is performing the functions of other departments amounts, in essence, to a re-designation by the Governor of the salaries of the employees of state agencies, also in contravention of Article 16, § 4. The Governor has re-designated the amount previously determined by the General Assembly to be available for employees of the various state agencies other than ESD. Under Article 16, § 4, only the General Assembly can make such a re-designation.
The use of ESD Special Fund monies to pay Mr. Brady's salary also conflicts with Article 5, § 29 of the Arkansas Constitution, which states:
§ 29. Appropriations.
 No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.
Ark. Const., Art. 5, § 29.
The purpose of the ESD Special Fund is set forth at A.C.A. § 19-5-984, as follows:
19-5-984. Employment Security Special Fund.
 (a) There is hereby established on the books of the Treasurer of State, the Auditor of State, and the Chief Fiscal Officer of the State a fund to be known as the Employment Security Special Fund.
 (b)(1) This fund shall consist of unemployment compensation contribution interest and penalty payments collected pursuant to §§ 11-10-716—11-10-722 and the proceeds of the one-twentieth of one percent (.05%) stabilization tax, § 11-10-706(f).
 (2) The fund shall be used for refunds of interest and penalties erroneously paid and such other additional purposes necessary to the proper administration of § 11-10-101 et seq., as determined by the Director of the Arkansas Employment Security Department as set out in §§ 11-10-716—11-10-722.
A.C.A. § 19-5-984 (emphasis added).
The above-quoted provision gives the Director of ESD some discretion in determining the use of the ESD Special Fund. However, that discretion is limited to choosing uses of the Fund that are related to the "proper administration of § 11-10-101 et seq." Those statutes (A.C.A. § 11-10-101et seq.) constitute the "Arkansas Employment Security Law" and all deal with employment security matters. Clearly, the Director's chosen uses of the Special Fund must pertain to employment security matters and cannot pertain to functions that are unrelated to employment security, such as functions that are designed to serve other state agencies.
Accordingly, the use of the ESD Special Fund for any purpose other than the administration of the employment security laws, as required by A.C.A. § 19-5-984, constitutes a direct violation of Article 5, § 29, as well as a violation of A.C.A. § 19-5-984 itself.
For these reasons, I conclude that the use of the ESD Special Fund for the payment of Mr. Brady's salary as Director of the Washington, D.C. Office of the Governor is impermissible under Arkansas law.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General